# In the United States Court of Federal Claims

No. 17-835C
(Filed: July 28, 2017)

| | |
|---|---|
| A SQUARED JOINT VENTURE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | Bid Protest; Preliminary Injunction; Organizational Conflicts of Interest; Pre-award Protest |

**ORDER DENYING PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

Pending before the court is the June 20, 2017 motion filed by A Squared Joint Venture ("A2JV") for a temporary restraining order and preliminary injunction in connection with the government's decision to eliminate A2JV from consideration under a solicitation issued by the National Aeronautics and Space Administration ("NASA"), Marshall Space Flight Center ("MSFC") for Acquisition and Business Support Services ("ABSS"). ECF No. 4. The ABSS contract is a follow-on contract to a contract currently being performed by one of the members of A2JV, Al-Razaq Computing Services ("Al-Razaq"). A2JV was eliminated from the competition on the grounds that Al-Razaq was found to have an unmitigated potential organizational conflict of interest ("OCI"). Specifically, A2JV was eliminated after the contracting officer learned that the current

and former project managers on the first ABSS ("ABSS1") contract had worked on A2JV's proposal for the follow-on ABSS contract, now referred to as "ABSS2." A2JV argues in its motion for preliminary relief that the contracting officer erred in finding that there were OCI issues and thus A2JV is likely to succeed on the merits of its claim. A2JV further argues that the equities and public interest weigh in favor of enjoining NASA from awarding the ABSS2 contract until the court can consider the merits of its case.

The government argues in its response to A2JV's preliminary injunction motion filed on June 26, 2017 that the contracting officer's decision to eliminate A2JV from the competition was reasonable and in conformity with the solicitation and the contractual provisions binding Al-Razaq. As such, the government contends that A2JV cannot show that it is likely to succeed on the merits of its case. The government also argues that A2JV is not entitled to any form of injunctive relief because it waited more than thirteen months after its elimination from the competition to bring this case. In this connection, the government contends that A2JV's claim for injunctive relief should be barred under the doctrine of laches. Finally, the government argues that the public interest and balance of harms favor the government and that the contract should be awarded as planned before August 1, 2017.

Also pending before the court is the government's June 26, 2017 motion to dismiss A2JV's complaint for failure to state a claim upon which relief can be granted. ECF No. 9. The government argues that A2JV's action is barred under the Federal Circuit's decision in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed.

Cir. 2007) on the grounds that A2JV needed to clarify and seek review of any potential OCI issues before it submitted its proposal or it waived its right to challenge A2JV's elimination on OCI grounds.  The court finds that it is not necessary to reach the *Blue & Gold* issue at this stage of the litigation.  In this order, the court will only address the plaintiff's motion for a preliminary injunction and will address the government's *Blue & Gold* and laches arguments when it considers the case on the merits.

### I.     Factual Background

On February 16, 2016, NASA issued a request for proposals for Solicitation NNM16534124R ("solicitation") for ABSS2.  App. to Pl.'s Mot. for TRO ("A2JV App.") at 5.  This procurement includes a variety of acquisition and business support services to assist MSFC and other NASA facilities as needed.  *Id.*   Proposals for the solicitation were due on or before March 18, 2016.  *Id.*

The solicitation contains several provisions regarding OCI.  These provisions include a limitation of future contracting and a reference to subpart 9.5 of the Federal Acquisition Regulation (FAR).  The solicitation also asks potential offerors to confirm that their proposals are not tainted by potential OCI.  In section K.12, the solicitation states:

> **K.12  ORGANIZATIONAL CONFLICTS OF INTEREST DISCLOSURE CERTIFICATION**
>
> By submission of its proposal, the Offeror warrants that to the best of its knowledge and belief, there are no relevant facts or circumstances which could give rise to an actual or potential Organizational Conflicts of Interest (OCI), as described in the Federal Acquisition Regulation (FAR) Subparts 2.101 and 9.5, or that the Contractor has

>   disclosed all such relevant information in writing to the Contracting Officer.

App. to Def.'s Mot. to Dismiss ("Def. App.") 16-17.

As noted above, Al-Razaq, one of the members of the joint venture that formed A2JV, is currently providing the same services that are being sought in the pending procurement under its ABSS1 contract with NASA. A2JV App. 5. Al-Razaq has been providing services under ABSS1 since May 1, 2011. A2JV App. 5. The ABSS1 contract contains the following clause related to limitation of future contracting:

>   [T]o avoid any conflict of interest related to unequal access to information, biased ground rules, and/or impaired objectivity with respect to future contracting opportunities, the Contractor or any subcontractor (including any affiliate as defined in FAR 2.101) under this contract shall not perform nor assist with the performance of any other contract/agreement under the cognizance of MSFC during the performance of this contract.

*Id.*

ABSS1 also includes an OCI plan in section J-16, which was prepared by Al-Razaq and incorporated into the contract as a compliance document in accordance with section I.10 of the ABSS1 contract. A2JV App. 7; Compl. at ¶ 11. The Al-Razaq's OCI plan for ABSS1 states the following:

>   Al-Razaq conducts an OCI screening process prior to accepting new work for the Government, including new work under existing contracts, and prior to submitting any proposal. The OCI screening process encompasses: 1) all current Al-Razaq work; 2) work related to all clients for whom Al-Razaq has performed work over the past 3 years; and 3) potential future Al-Razaq work put forward in ongoing marketing proposals.

A2JV App. 67.

> If an organizational conflict is identified during screening, Al-Razaq immediately discloses to the client the nature of any actual or potential organizational conflict, as well as any measures to avoid, mitigate, or neutralize the conflict. *Upon disclosure, work will not be initiated or rejected until Al-Razaq has received client approval.*

A2JV App. 71 (emphasis added).

From May 1, 2011 through December 2015, Ron Lentz was Al-Razaq's program manager for ABSS1 and Langston Hunter was Al-Razaq's deputy program manager for ABSS1. A2JV App. 5. On January 2, 2016, Mr. Lentz resigned from his post with Al-Razaq and began working for a new joint venture involving Al-Razaq and Adventus Technologies (Adventus) which is known as A2JV, the plaintiff in this case. *Id.* After Mr. Lentz's resignation, Mr. Hunter became Al-Razaq's program manager for ABSS1. *Id.,* Compl. ¶ 16.

According to Al-Razaq, it notified NASA in February 2016 that Al-Razaq employees would be assisting in preparing the proposal for ABSS2. Compl. ¶ 22-24. Al-Razaq acknowledges that under its OCI plan, it needed to conduct an OCI screening before submitting a proposal for follow-on work and needed to disclose any potential OCI to a NASA contracting officer with a plan to mitigate any OCI. Compl. ¶ 31. Al-Razaq states that NASA's contracting officer never asked for Al-Razaq to set up a firewall to avoid OCI. Compl. ¶ 35. NASA's contracting officer states that NASA did not receive a formal request for guidance on how to handle Al-Razaq's participation in seeking the follow-on contract to ABSS1. A2JV App. 11. NASA never gave Al-Razaq its formal approval to participate in preparation of A2JV's ABSS2 proposal.

On March 18, 2016, NASA received a proposal from A2JV for the ABSS2 Solicitation.  A2JV App. 6.  Both Mr. Lentz (Al-Razaq's former program manager for ABSS1) and Mr. Hunter (Al-Razaq's current program manager for ABSS1) confirm that they "collaborated to assist with the preparation of the A2JV proposal."  Compl. ¶ 29.  The proposal was hand-delivered to Rita R. James, one of NASA's contracting officers, by Mr. Hunter and Mr. Lentz.  A2JV App. 6; Compl. ¶ 33.

On May 9, 2016, the contracting officer, Ketela K. Helton, informed A2JV that its proposal was being eliminated from the competition on the grounds that the A2JV proposal with Al-Razaq, as part of the joint venture, was tainted with potential OCI.  Compl. ¶ 36.  Ms. Helton stated in her May 9, 2016 letter to A2JV that she based her decision on the following concern that Mr. Hunter had helped to prepare the A2JV proposal.  She wrote, "Al-Razaq's use of the existing ABSS program manager [in preparing the A2JV proposal] gave Al-Razaq an unacceptable OCI based upon unequal access to information described in section 9.505-4 of the Federal Acquisition Regulation (FAR)."[1]  A2JV App. 3.  She continued that Mr. Lenz's participation as the former program manager also raised a conflict of interest under FAR 3.101-1 regarding the "appearance of a conflict of interest."  Id.  She explained that having two program

---

[1] FAR 9.505-4(a) provides in relevant part as follows: "When a contractor requires proprietary information from others to perform a Government contract and can use the leverage of the contract to obtain it, the contractor may gain an unfair competitive advantage unless restrictions are imposed."

managers involved in the preparation of the A2JV proposal, "creates a conflict of interest that taints the integrity of the competition . . . ." A2JV App. 4.

On May 17, 2016, A2JV filed a protest with the Government Accountability Office ("GAO") challenging the decision to eliminate A2JV from the ABSS2 competition. Compl. ¶ 41. In the proceeding before the GAO, the contracting officer, Ms. Helton filed her Statement of Relevant Facts, in which she further explained her reasons for eliminating A2JV from the competition. She stated that (1) Al-Razaq had access to commercial and financial information that is either confidential or privileged;[2] (2) Al-Razaq had failed, as required by its ABSS1 contract, to screen for OCI prior to submitting any proposal and to immediately disclose any identified OCI to MSFC; (3) Al-Razaq employees either knew or should have known (as a result of training required by Al-Razaq's OCI plan) of the historical use of firewalls by NASA to separate current ABSS1 employees from outside proposal activities related to a follow-on contract, yet Al-Razaq and A2JV failed to officially report the OCI so that an acceptable resolution could have been reached; and (4) Mr. Hunter, Al-Razaq's current program manager for ABSS1, and Mr. Lentz, Al-Razaq's former program manager for ABSS1, were both involved in preparing the A2JV proposal, which gave A2JV an unfair competitive advantage. A2JV App. 11. She concluded that "while a firewall could have been used to

---

[2] The record before the GAO explains that Al-Razaq personnel have unrestricted access to information that could have given them a competitive advantage, including documents that contain "the burden rates (i.e., fringe, overhead, G&A) and profit . . . and how such burdens were escalated over the life of the contract." A2JV App. 9 (Contracting Officer's Statement of the Relevant Facts).

allow Al-Razaq to assist with the preparation of the A2JV proposal for ABSS2 without the use of current ABSS1 employees, once the proposals for ABSS2 were received, it was too late to establish a firewall." A2JV App. 12.

After reviewing the record, including the contracting officer's statement of relevant facts, the GAO concluded that "prior to the closing time for receipt of proposals, A2JV was aware of the operative facts regarding the existence of an actual or potential OCI involving itself, as well as the agency's position on the offeror's eligibility to compete in the ABSS2 procurement," and therefore A2JV "was required to protest the ground rules of the procurement prior to the RFP's closing date." A2JV App. 24-25. As a result, the GAO dismissed A2JV's protest as untimely. A2JV App. 24-26. In its decision, the GAO also noted that "the contracting officer reasonably found that A2JV had an unequal access to information OCI as a result of performing the ABSS1 contract, which the offeror failed to show had been adequately mitigated so as to avoid an unfair competitive advantage in the ABSS2 procurement." A2JV App. 26.

On June 20, 2017, thirteen months after NASA disqualified its bid and ten months after the GAO dismissed its claim, A2JV filed the instant action. *See* Compl. A2JV also filed a motion for preliminary relief in which it has attached declarations from Fiamatta Iscandri, the President and Chief Executive Officer of Adventus Technologies, the managing partner in the A2JV joint venture; Ibrahim Iscandri, the Vice President and Chief Operating officer for Aventus Technologies; and Langston Hunter, an employee of Al-Razaq and the program manager for the ABSS1 contract. ECF No. 4. In their declarations, Fiamatta Iscandri and Ibrahim Iscandri both state that they reviewed the

8

situation and determined that "no OCI existed that would preclude Messrs. Hunter and Lentz and Al-Razaq from participating in the preparation of a proposal for the RFP." A2JV App. 32.  Mr. Hunter states that in order "[t]o minimize any perceived conflicts of interest ('COI') and specifically [OCI]," Al-Razaq put a "firewall in effect from the inception of the ABSS1 Contract phase-in on April 1, 2011 to the present time."  A2JV App. 55.  According to Mr. Hunter, "[d]ue to the firewall in place, only individuals from Al-Razaq who did not have access to sensitive contractor information participated in the development of the A2JV project." *Id.*

Mr. Hunter further states that there was an email exchange with NASA Contracting Officer Rita James in which he informed her that he would be working on the ABSS2 proposal and consequently "NASA was on Notice as early as November 2015 that both Al-Razaq and myself in particular would participate in the procurement for the ABSS2 Contract" and that Ms. James expressed no concerns regarding any conflict of interest or the involvement of Al-Razaq and me."  A2JV App. 54.  Mr. Hunter also states that he discussed using Al-Razaq employees on the ABSS2 proposal with NASA Contracting Officer Sherry Finn "in late February or early March 2016" and that their "meeting ended with the mutual understanding that Al-Razaq Program Leads would not be involved in any aspect of the proposal."  A2JV App. 55-56.  According to Mr. Iscandri, "if NASA had insisted that Lentz or Hunter should not be involved in the bid for the ABSS2 Contract, even though we disagreed," plaintiff would have proposed eliminating Mr. Lentz and Mr. Hunter from the team and established a firewall.  A2JV App. 48.  With regard to the equities, A2JV argued that it would "suffer irreparable harm

by the very fact of being denied the opportunity to compete fairly for a contract," but did not provide any declaration to support this assertion. Pl.'s Mem. in Supp. of TRO and PI 25-27. The Government in its response to A2JV's motion submitted the declaration of Sherry K. Davidson, a contracting officer at NASA, who stated

> Any delay in the effective date of the ABSS2 contract will cause substantial harm to the U.S. Government. Potential savings of the ABSS2 contract over the ABSS1 contract are estimated to be between $12,364.78 per day and $13,998.17 per day, which will result from reduced fully burdened labor rates under the ABSS2 contract. In other words, the cost to the U.S. Government of retaining Al-Razaq after the ABSS2 contract's effective date would be approximately $13,000 per day. In light of the expected savings to the U.S. Government, I have determined that it is in the best interest of the U.S. Government to award the ABSS2 contract in the most expeditious manner possible.

Def. App. 18-19.

## II.    Standard of Review

The standards to obtain a preliminary injunction in a bid protest are well-settled. In deciding whether an injunction should be issued, a court considers: (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

In order to show that it is likely to succeed on the merits of its bid protest, the plaintiff must be able to demonstrate that the agency's decision to eliminate A2JV from

the competition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (quoting *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351); *see also* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  "Accordingly, procurement decisions are subject to a 'highly deferential rational basis review.'" *PAI Corp.*, 614 F.3d at 1351 (quoting *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008)).  "Applying this highly deferential standard, the court must sustain an agency action unless the action does not 'evince[] rational reasoning and consideration of relevant factors." *See also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).  A court may set aside an agency's decision only if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Id.* at 1381.  Further, agency decision making is entitled to a "presumption of regularity," *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001).

### III. A2JV Does Not Meet the Standards for a Preliminary Injunction

#### A. A2JV is not likely to succeed on the merits of its case

A2JV argues that the decision to eliminate it from the competition was arbitrary and capricious on the ground that the contracting officer did not have reason to find that A2JV had any potential OCI and had the contracting officer investigated the situation, she would have learned that Al-Razaq took all necessary steps to avoid OCI.  The government argues that A2JV is not likely to succeed on the merits of its protest.  The government argues that the contracting officer's decision to eliminate A2JV from the

competition on OCI grounds was reasonable and supported by the facts.  Specifically, the government argues that A2JV could not rely on the work of the present and former program managers of the ABSS1 contract to prepare the proposal for the ABSS2 contract without NASA's express permission after a plan to avoid any potential OCI was approved.

For the reasons that follow, the court finds that A2JV is not likely to prevail on its claim that the contracting officer's decision to eliminate A2JV from the competition on OCI grounds was not rational or supported.

First, Al-Razaq's ABSS1 contract states that, "to avoid any conflict of interest related to unequal access to information," Al-Razaq "shall not perform nor assist with the performance of any other contract/agreement under the cognizance of MSFC during the performance of this contract."  A2JV App. 7.  Al-Razaq also submitted an OCI plan before commencing the ABSS1 contract, in which it agreed to "immediately disclose[] to the client the nature of any actual or potential organizational conflict, as well as any measures to avoid, mitigate, or neutralize the conflict."  A2JV App. 7-8; Compl. ¶ 11 (discussing Al-Razaq's OCI plan).  Al-Razaq even assured NASA that "work will not be initiated or rejected until Al-Razaq has received client approval."  A2JV App. 70.[3]

---

[3] As noted above, the OCI plan reads as follows:
>Al-Razaq conducts an OCI screening process prior to accepting new work for the Government, including new work under existing contracts, and prior to submitting any proposal.  The OCI screening process encompasses: 1) all current Al-Razaq work; 2) work related to all clients for whom Al-Razaq has performed work over the past 3 years; and 3) potential future Al-Razaq work put forward in ongoing marketing proposals.

A2JV App. 67.

12

Therefore, Al-Razaq knew or should have known that the involvement of its present and former program managers in preparing A2JV's ABSS2 proposal without express written permission from NASA would raise potential OCI concerns. The fact that Al-Razaq claims to have implemented a firewall on its own demonstrates that it was aware of at least the potential OCI raised by seeking follow-on work using Al-Razaq employees. *See* A2JV App. 55 (Mr. Hunter's declaration stating that in order "[t]o minimize any perceived conflicts of interest ('COI') and specifically [OCI]," Al-Razaq put a "firewall in effect from the inception of the ABSS1 Contract phase-in on April 1, 2011 to the present time.").

Second, the Solicitation stated that offerors such as A2JV had to warrant that no "relevant facts or circumstances which could give rise to an actual or potential [OCI]" existed, or, if such circumstances did exist, "disclose[] all such relevant information in writing to the Contracting Officer." Def. App. 16-17. There cannot be a serious dispute that using two ABSS1 program managers to prepare the A2JV proposal for ABSS2 raised the potential for OCI.

Finally, there is no dispute that these program managers had access to sensitive information whether they availed themselves of that access or not. They were not under

---

> If an organizational conflict is identified during screening, Al-Razaq immediately discloses to the client the nature of any actual or potential organizational conflict, as well as any measures to avoid, mitigate, or neutralize the conflict. Upon disclosure, work will not be initiated or rejected until Al-Razaq has received client approval.

A2JV App. 70.

any NASA-approved plan not to access sensitive information that could rise to actual OCI. Also there is no dispute that A2JV did not reveal in writing that it planned to use these ABSS1 program managers to help prepare the A2JV proposal even though the solicitation required A2JV to notify NASA of any potential OCI. There is no dispute that Al-Razaq did not get written permission from NASA before A2JV allowed the program managers to help prepare the proposal. These facts are sufficient to show that the record will support that A2JV had unresolved potential for OCI.

A2JV's contention that it did not have potential OCI because neither of the program managers engaged in behavior that would give rise to actual OCI is not sufficient to show that it will likely prevail on the merits of its challenge. A2JV's problem is with potential OCI not with actual OCI. The fact that Mr. Hunter, Al-Razaq's project manager at the time, took steps to protect against having access to any actual OCI during the preparation of A2JV's proposal does not obviate the contracting officer's concern that A2JV's proposal was "tainted" with OCI. The fact remains that Mr. Hunter understood that there was a potential for OCI concerns and yet Al-Razaq did not obtain written clearance from NASA and A2JV never raised the issue with NASA.

In view of the foregoing, A2JV's reliance on a variety of informal interactions between NASA employees and Al-Razaq employees to show that NASA may have been aware of Al-Razaq's OCI issue but did not take steps to counsel Al-Razaq is misplaced. NASA was not responsible for resolving Al-Razaq's OCI and thus A2JV's potential OCI issues. Al-Razaq needed to provide NASA with written notice so that the potential for OCI did not become a problem. A2JV also had to be aware, given the express language

in the Solicitation which required all bidders to provide written notice if they had knowledge of any circumstances that could give rise to potential OCI, that any potential OCI issues should have been resolved through written communications with NASA.

A2JV's contention that even if there were the potential for OCI the contracting officer was wrong to have eliminated its proposal from the competition is also without merit.  The FAR states, in relevant part, that "[e]ach individual contracting situation should be examined on the basis of its particular facts and the nature of the proposed contract."  48 C.F.R. § 9.505.  In making determinations regarding potential or actual OCI, contracting officers should exercise "common sense, good judgment, and sound discretion."  *Id.*  The Federal Circuit has explained that "the identification of OCIs and the evaluation of mitigation proposals are fact-specific inquiries that require the exercise of considerable discretion."  *Axiom Res. Mgmt.*, 564 F.3d at 1382.  The court's task is to ensure that the contracting officer's exercise of that discretion had a rational basis.  *See id.* at 1381.

As discussed above, the contracting officer made her decision to eliminate A2JV from the competition after concluding that (1) potential OCI existed because Al-Razaq personnel had access to sensitive nonpublic information; (2) A2JV failed to comply with relevant OCI provisions and NASA's directives relating to potential OCI; and (3) A2JV's non-compliance resulted in a failure to institute NASA-approved measures to avoid, mitigate, or neutralize the potential OCI.  A2JV App. 11-12.  In light of these findings it is not likely that A2JV will be able to show that the contracting officer was irrational

when she concluded that A2JV's potential OCI could not be mitigated at the proposal submission stage and thus A2JV had to be eliminated from the competition.

The court also agrees with the government that A2JV is not likely to prevail on its claim that the contracting officer violated the FAR for failing to institute OCI corrective measures after learning that Al-Razaq was planning to make a proposal to work on ABSS2 but before A2JV submitted its proposal.  *See* Mot. at 22-24.  Under FAR Section § 9.504(a), a contracting officer has the responsibility to "[i]dentify and evaluate potential [OCI]" and "[a]void, neutralize, or mitigate significant potential conflicts before contract award."  48 C.F.R. § 9.504(a).  Here, by virtue of Al-Razaq's OCI plan, Al-Razaq was required to initiate steps to resolve any potential OCI with NASA and failed to do so.  Thus, the fact that the contracting officer may have known that Al-Razaq was considering working on the proposal for ABSS2 did not shift the burden of addressing OCI from Al-Razaq and A2JV to the contracting officer.

In view of the foregoing, the court does not find it necessary to reach A2JV's claim that the contracting officer acted in bad faith.  A2JV does not present any facts to suggest that the decision to disqualify A2JV from the competition was for other than the reasons stated by the contracting officer.  The contracting officer's decision is entitled to a presumption of regularity, and "to put facts relating to bad faith in play a plaintiff must first make a threshold showing of either a motivation for the Government employee in question to have acted in bad faith or conduct that is hard to explain absent bad faith."  *Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004) (citing *Impresa*

*Construzioni v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)). A2JV has not made such a showing.

### B. A2JV Has Not Established Irreparable Harm or that the Equities Balance in its Favor

A2JV claims that it will suffer irreparable harm by virtue of "the denial of the opportunity to compete for a multi-year contract with a potential, cumulative total of $83 million." Pl.'s Mot. at 26. While A2JV will likely suffer economic harm, the court finds that this harm is largely of its own making given the fact that it was eliminated from the competition thirteen months ago and had its case dismissed by the GAO more than ten months ago and therefore could have filed suit challenging its elimination long before NASA was about to issue an award on the ABSS2 contract. *See Aircraft Charter Sols., Inc. v. United States*, 109 Fed. Cl. 398, 416 (2013) ("When significant delay in bringing a protest has contributed to the irreparable nature of the injuries alleged by the plaintiff, any self-inflicted harm should not be considered irreparable for purposes of the injunctive relief analysis.").[4]

Moreover, the court is persuaded that the equities weigh in favor of the government. First, the court understands that the government will be forced to spend more money than necessary and second, the court also understands from counsel's statements at the July 21, 2017 oral argument, that if a contract is not awarded, as

---

[4] The court understands that the government believes for these same reasons that A2JV's claim for injunctive relief is barred under the doctrine of laches. However, as with the government's defense under *Blue & Gold*, the court does not find it necessary to reach the issue at this time and will address the issue of laches in briefing on the merits.

planned by August 1, 2017, the government may need to reopen the competition to allow all offerors to submit new proposals given the time that has elapsed.  This would mean that the time NASA has spent reviewing the proposals received would have been wasted.  This is not in the public interest.  Accordingly, the court finds that the equities weigh in favor of the United States and the contract should be awarded as planned.

## IV. CONCLUSION

For the reasons stated above, A2JV's motion for preliminary relief is **DENIED**. The parties shall have until **August 14, 2017** to file a joint status report with proposed schedule for resolving this case on the merits.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
