# In the United States Court of Federal Claims

No. 17-835C
(Filed: February 28, 2018)*
**\*Opinion originally filed under seal on February 23, 2018**

|  |  |  |
|---|---|---|
| A SQUARED JOINT VENTURE, | ) | |
| | ) | |
| | ) | Bid protest; FAR § 9.504(a)(1),(2); |
| Plaintiff, | ) | FAR § 9.504(e); Significant Potential |
| | ) | Organizational Conflict of Interest; |
| v. | ) | Unequal Access to Information; "Hard |
| | ) | Facts." |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Joseph P. Dirk*, Dallas, TX for plaintiff.

*Borislav Kushnir,* Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with who were *Chad Readler,* Acting Assistant Attorney General, *Robert E. Kirshman, Jr.,* Director, and *Douglas K. Mickle*, Assistant Director for the defendant. *Jerry L. Seemann*, National Aeronautics & Space Administration, Office of Chief Counsel, Washington, D.C., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

Pending before the court in this bid protest is A Squared Joint Venture's ("A2JV")

motion for judgment on the administrative record together with the defendant's

("government") cross motion for judgment on the administrative record. A2JV is a joint

venture between Al-Razaq Computing Services ("Al-Razaq") and Adventus

Technologies, Inc. ("Adventus"). Al Razaq is owned by Idrisa Iscandri and Adventus is

owned by [. . .], Faimatta Iscandri.

At issue in this case is the National Aeronautics and Space Agency's ("NASA") decision to disqualify A2JV from competing for an acquisition and business support services ("ABSS") contract under request for proposal no. NNM16534124R.  This procurement is for the second ABSS contract ("ABSS2").  Al-Razaq was the incumbent contractor on the first ABSS contract ("ABSS1").  NASA's source selection authority for the ABSS2 contract and a contracting officer ("CO") on the ABSS1 contract,  Ketela Helton, learned before considering proposals for the ABSS2 contract that the past and present program managers on Al- Razaq's ABSS1 contract (Mr. Ron Lentz and Mr. Langston Hunter respectively) had participated in preparing A2JV's proposal for the ABSS2 contract.  Upon receiving this information she investigated whether their involvement created a significant potential organizational conflict of interest ("OCI") based on unequal access to information.  After confirming that Al- Razaq had confidential business information involving an A2JV competitor in the contract files, Ms. Helton determined that A2JV had a significant potential OCI which could not be mitigated so late in the proposal process and thus she disqualified A2JV from consideration for the ABSS2 contract.

A2JV filed its complaint in this court on June 20, 2017.[1]  A2JV filed the pending motion for judgment on the administrative record on November 14, 2017.  (ECF No. 44).

---

[1] On July 28, 2017, the court denied A2JV's motion for preliminary injunctive relief. (ECF No. 14).  The award of the ABSS2 contract based on a source selection decision made on August 1, 2017 was delayed because of a protest filed by an unsuccessful offeror.  That protest raised issues that have needed to be resolved. During this period of time, Al-Razaq has continued to perform the ABSS1 contract under a bridge contract that is set to expire on March 31, 2018.

In its motion for judgment on the administrative record, A2JV contends that CO Helton's decision to disqualify A2JV from consideration for the ABSS2 contract was arbitrary, capricious, an abuse of discretion and in violation of the Federal Acquisition Regulations ("FAR").  Specifically, A2JV alleges that CO Helton, along with her colleagues CO Rita James and CO Sherry Fenn, violated FAR §9.504(a)(1) and (2)[2] by failing to identify and notify Al-Razaq earlier that involving its program managers in preparing A2JV's proposal for the ABSS2 contract could give rise to significant potential OCI.  A2JV argues that the COs should have informed Al-Razaq that OCI could arise and then the COs should have taken steps to avoid, neutralize, and mitigate any significant potential OCI created by Al-Razaq employees participating in preparing the ABSS2 contract bid proposal.[3]

A2JV also contends that CO Helton's conclusion that there was significant potential OCI is not supported.  A2JV argues that merely because Al Razaq's past and present program managers, Mr. Lentz and Mr. Hunter, worked for Al Razaq and may have had access to information, did not mean that the program managers in fact used their positions to gain access to information that could give rise to significant potential OCI.

---

NASA intends to make a final award of the ABSS2 contract before February 23, 2018 (ECF No. 53).

[2] FAR §9.504(a) provides "[u]sing the general rules, procedures, and examples in this subpart, contracting officers shall analyze planned acquisitions in order to—(1) Identify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible; and(2) Avoid, neutralize, or mitigate significant potential conflicts before contract award."

[3] Mr. Lentz and Mr. Hunter submitted affidavits in proceedings before the GAO stating that they were not informed by NASA officials that the incumbent contractor must report to NASA that an unequal access to OCI existed if the incumbent contractor is participating in a procurement for the contract replacing the incumbent's existing contract. AR1585-86, 1614.

A2JV argues that the CO's conclusion that A2JV's proposal was prepared by individuals with unequal access to information because Al Razaq could access contract files with information about an A2JV potential competitor on the ABSS2 contract was not supported by "hard facts."

Finally, A2JV argues that CO Helton also failed to comply with FAR § 9.504(e).[4] A2JV argues that under this FAR provision, CO Helton erred by failing to conduct a proper investigation before disqualifying A2JV and by failing to provide A2JV with a reasonable opportunity to respond to the CO's OCI concerns and then an opportunity to mitigate those concerns before A2JV was disqualified.

The government argues in response that NASA's COs fulfilled their obligations under both FAR § 9.504(a)(1) and (2) and (e), and that the decision to disqualify A2JV was not arbitrary, capricious or an abuse of discretion.  The government contends that it was not until Mr. Lentz and Mr. Hunter hand delivered A2JV's proposal to NASA that NASA's COs learned that Al-Razaq's past and present program managers were directly involved in preparing A2JV's proposal.  The government explains that as program managers for Al-Razaq, Mr. Lentz and Mr. Hunter had access to confidential business information belonging to a competitor for the ABSS2 contract.  The government argues that access to a competitor's confidential business information qualifies as having

---

[4] FAR § 9.504(e) states in relevant part: "The contracting officer shall award a contract to the apparent successful offeror unless a conflict of interest is determined to exist that cannot be avoided or mitigated. Before determining to withhold award. . . the contracting officer shall notify the contractor, provide the reasons therefor and allow the contractor a reasonable opportunity to respond. . ."

unequal access to information under FAR § 9.504(a). The government contends the right

to access confidential files meets the requirement of a "hard fact" to support a CO's

finding of significant potential OCI. The government argues that the participation of

present and former Al-Razaq program managers in preparing A2JV's proposal tainted

A2JV's submission with significant potential OCI and that CO Helton reasonably

concluded that allowing A2JV to remain in the competition would taint the ABSS2

source selection process.

Regarding A2JV's claims under FAR § 9.504(e), the government argues that the

FAR provision does not apply. The government explains that FAR § 9.504(e) is

triggered only after the CO has identified an apparent successful offeror. Here, because

A2JV was disqualified before proposals were evaluated and an apparent successful

offeror was identified, the government contends that FAR § 9.504(e) was never

triggered.

For the reasons discussed below, the court agrees with the government on all

issues. Therefore, A2JV's motion for judgment on the administrative record is **DENIED**

and the government's cross motion for judgment on the administrative record is

**GRANTED**.

    I.    Factual Background and Procedural History

        a.  ABSS1 Contract

On May 1, 2011, NASA awarded the ABSS1 contract to Al-Razaq. AR 46.

Under the ABSS1 contract, Al-Razaq provided a variety of services including:

acquisition support; acquisition planning; solicitation preparation; contract award and

performance; payment; and closeout services.  AR 110-12.  In order to perform its duties under the ABSS1 contract, Al-Razaq was allowed to give its employees access to contract files which contained bidders' proposals, contractor's financial information, and documentation of NASA's acquisition decision-making process. AR 606 at ¶ 7. Due to the nature of Al-Razaq's access to non-public procurement information, the ABSS1 Contract contained a limitation on Al-Razaq's future contracting.  Specifically, the ABSS1 contract provided that "to avoid any conflict of interest related to unequal access to information, biased ground rules, and/or impaired objectivity with respect to future contracting opportunities, the Contractor or any subcontractor […] under this contract shall not perform nor assist with the performance of any other contract/agreement under the cognizance of MSFC [Marshall Space Flight Center] during the performance of this contract." AR 74 at §H.12

In addition, Al-Razaq had in place an OCI plan that required Al-Razaq to screen for OCI prior to accepting new work from the government.  The Al-Razaq OCI plan stated that "[i]f an organizational conflict is identified during screening, Al-Razaq [will] immediately disclose to the client the nature of any actual or potential organizational conflict, as well, as any measures to avoid, mitigate, or neutralize the conflict.  Upon disclosure, work will not be initiated or rejected until Al-Razaq has received client approval.  AR 230-31, 277.

For the period from May1, 2011 until December 2015, Ron Lentz was Al-Razaq's program manager for the ABSS1 contract.  Langston Hunter was Al-Razaq's deputy program manager.  AR 1 at ¶ 2.01.  In December 2015, Mr. Lentz resigned his position at

Al-Razaq and informed NASA that he would be working for A2JV.  *Id.* at ¶ 2.02.  On January 2, 2016, Mr. Hunter became Al-Razaq's program manager for the ABSS1 contract. *Id.*  As program managers, Mr.Lentz and Mr. Hunter had access to confidential business information in NASA's procurement files.

   b.   Solicitation for the ABSS2 Contract

On February 16, 2016, NASA issued a request for proposal ("RFP") for the ABSS2 contract which called for the same services as those provided by Al-Razaq under the ABSS1 contract.  *See* AR 372-79.  The ABSS2 RFP was, however, set aside for Women Owned Small Businesses ("WOSB").  AR 514 at §L.18(a)(2).  As noted above, Al-Razaq's owner Idrisa Iscandri joined with Adventus, a firm owned by [. . .], Faimatta Iscandri, to compete for the ABSS2 contract.  By creating a combined joint-venture A2JV, Al Razaq could compete for the new ABSS contract, as a WOSB. Section K.12 of the ABSS2 RFP provided that "[b]y submission of its proposal, the Offeror warrants that to the best of its knowledge and belief, there are no relevant facts or circumstances which could give rise to an action or potential Organizational Conflict of Interest (OCI), as described in the Federal Acquisition Regulation (FAR) Subparts 2.101 and 9.5, or that the Contractor has disclosed all such relevant information in writing to the Contracting Officer." AR 498-499

Before submitting A2JV's proposal, Al Razaq employees had various conversations with the NASA COs regarding Al Razaq's role with A2JV in preparing a proposal for the ABSS2 contract.  The ABSS1 contract was overseen by 3 contracting officers: COs Helton, James, and Fenn.  On November 24, 2015, prior to the issuance of

7

the ABSS2 RFP, Mr. Hunter, now Al Razaq's program manager on the ABSS1 contract,

informed CO Rita James that he would be attending the ABSS Industry Day and that Al-

Razaq intended to form a WOSB joint venture with Adventus in order to compete for the

ABSS2 contract.  AR 1656-1657.  The COs did not take any action at that time.  In

February 2016, after NASA had issued the ABSS2 RFP, Mr. Hunter and CO Sherry Fenn

discussed the propriety of using Al-Razaq team leads under his supervision to help

prepare A2JV's proposal.  AR 708 ¶ 2.  The record reflects that at the end of that

discussion Mr. Hunter and CO Fenn jointly concluded that it would be best not to involve

Al-Razaq's team leads in preparing the A2JV proposal.  AR 708.  On February 24, 2016

CO Helton met with Mary Dobbins, one of Al-Razaq's team leads.  AR 605 at ¶2.

During their meeting Ms. Dobbins asked CO Helton whether Al Razaq personnel

associated with the ABSS1 contract could assist in the preparation of proposals for the

ABSS2 RFP.  *Id.*  In the meeting Ms. Dobbins apparently showed CO Helton a copy of a

letter dated November 5, 2009 between NASA and Al-Razaq's predecessor on the

ABSS1 contract, Digital Fusion Solutions, Inc. ("Digital Fusion").  The letter stated that

Digital Fusion employees could not participate in any proposal activity related to the

successive contract without a firewall in place to avoid OCI.  After, discussing the issue,

CO Helton informed Ms. Dobbins that a similar arrangement would have to be

implemented with Al-Razaq, and that Al-Razaq would need to make an official written

request to trigger a firewall.  AR 650 ¶ 2.  NASA never received any written request.

      c.  The CO's Investigation and Disqualification Decision

As noted above, on March 18, 2016, Mr. Hunter and Mr. Lentz hand delivered A2JV's ABSS2 proposal to CO James.  AR 601.  At that time, Mr. Hunter stated that he was glad that A2JV's bid was submitted because he had been working hard on A2JV's proposal for the past two weeks.  Shortly after A2JV's proposal was delivered, CO James reported Mr. Hunter's statements to CO Helton.  The next day, CO Helton asked Mr. Hunter if he had worked on A2JV's proposal to which he answered that he had.  AR 605 ¶5. This led CO Helton to investigate whether Mr. Hunter and Mr. Lentz's involvement in preparing A2JV's proposal gave rise to potential OCI under FAR § 9.504(a).  AR 609-54.  During her investigation CO Helton learned that Al-Razaq in fact had confidential business information in contract files belonging to one of A2JV's competitors for the ABSS2 contract, Deltha Critique Joint Venture.  AR 606.  Both Mr. Lentz and Mr. Hunter had access to this information as program managers on the ABSS1 contract. Based on her findings, CO Helton concluded that A2JV had significant potential OCI. She also concluded that the significant potential OCI could not be mitigated after proposals were submitted.

On May 9, 2016, CO Helton called Adventus' Chief Executive Officer, Faimatta Iscandri, informing her that NASA had determined that A2JV had significant potential OCI and as a result NASA would be disqualifying A2JV from the ABSS2 contract competition.  On that same day, May 9, 2016, CO Helton issued a formal disqualification letter to A2JV.  In the letter she explained that A2JV was disqualified because of a significant potential OCI that tainted the integrity of the ABSS2 competition. AR 603-604.  In her letter CO Helton stated that through Al-Razaq, A2JV had access to

9

commercial and financial information that was confidential and contained information that could have given A2JV an unfair competitive advantage. CO Helton also explained that Al-Razaq had a contractual requirement in the ABSS1 contract to screen future work for OCI and disclose any identified or potential OCI to NASA and that by failing to do so in a timely fashion, NASA was not able to design an approach that would have allowed Al-Razaq to help A2JV prepare its proposal. AR603. In such circumstance, CO Helton concluded "the only practical way to acceptably resolve this matter is to disqualify the A2JV proposal from the competition." AR 604.

     d.  A2JV's Protest before the GAO

A2JV filed a bid protest before the Government Accountability Office ("GAO") on May 17, 2016, challenging NASA's disqualification decision. The GAO dismissed the protest on August 23, 2016, on the grounds that A2JV's protest was untimely. AR 1636-38. The GAO concluded that the protest was not timely because "prior to the closing time for receipts of proposals, A2JV was aware of the operative facts regarding the existence of an actual or potential OCI involving itself, as well as the agency's position on the offer's eligibility to compete in the ABSS2 procurement." AR 1636. GAO separately noted that regardless of whether A2JV's protest was timely, A2JV's arguments were without merit because "the contracting officer reasonably found that A2JV had an unequal access to information OCI as a result of performing the ABSS1 contract which the offeror failed to show had been adequately mitigated so as to avoid an unfair competitive advantage in the ABSS2 procurement." AR 1638 at n.13.

     e.  The Present Litigation

A2JV filed its complaint with this court on June 20, 2017, in advance of an award

decision.  Along with its complaint, A2JV moved for a temporary restraining order and

preliminary injunction on June 20, 2017. (ECF No. 5).  The court denied A2JV's motion

on July 28, 2017. (ECF No. 14).  Thereafter, on September 11, 2017, A2JV filed a

motion to take discovery and supplement the administrative record. (ECF No. 29).  On

October 17, 2017 the court issued an order denying A2JV's motion. (ECF No. 35).

A2JV, A2JV moved for judgment on the administrative record in November 14, 2017.

(ECF No. 44).  Briefing on A2JV's motion and on the defendant's cross motion was

completed on December 29, 2017.  Oral argument was heard on February 7, 2018.

II.    Legal Standards

a.   Motion for Judgment on the Administrative Record

This motion is before the court under Rule 52.1(c) of the Rules of the Court of

Federal Claims, as a bid protest. The standards of review for bid protests are set in 28

U.S.C. § 1491(b)(4), which requires the court to "review the agency's decision pursuant

to the standards set forth in section 706 of Title 5," the Administrative Procedure Act

("APA"). *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d

1324, 1332 (Fed. Cir. 2001); *Advanced Data Concepts, Inc. v. United States*, 216 F.3d

1054, 1057 (Fed. Cir. 2000).  Under section 706, an agency's decision may be set aside

only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with the law." 5 U.S.C. § 706(2)(A); *Banknote Corp. of Am., Inc. v. United States*, 365

F.3d 1345, 1350–51 (Fed. Cir. 2004) (quoting *Advanced Data*, 216 F.3d at 1057–58).

This review is on the administrative record and requires the court to consider whether

based on the evidence in the record the agency decision: (1) "lacked a rational basis;" or (2) "involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332 (citations omitted); see also 5 U.S.C. §§ 702, 706(2)(A). It is now well-settled that a procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333. The court's review is "highly deferential," and "the disappointed offeror bears a 'heavy burden' of showing that the award decision 'had no rational basis,'" *Impresa*, 238 F.3d at 1333; *see also Bahrain Mar. & Mercantile Int'l BSC v. United States*, 118 Fed. Cl. 462, 478 (2014) (citations and internal quotations omitted). The court may not substitute its own judgment for that of the agency, even if reasonable minds could reach differing conclusions. *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974). To prevail on a claim that the agency decision is arbitrary or capricious, a protestor may "succeed only where the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Bahrain Mar.*, 118 Fed. Cl. at 478 (quoting *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)). With regard to alleged errors of law, a protestor must demonstrate "'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238 F.3d at 1333 (citation omitted); see also *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.").

b. Organizational Conflicts of Interest

Organizational conflicts of interest arise when work performed on a federal contract leads to an unfair competitive advantage or impaired objectivity. FAR §9.505(b). Potential OCI can arise when a contractor has access to non-public information on a federal contract that could result in an unfair competitive advantage in a future procurement. FAR §9.505(b)(1) and (2). Under the FAR, avoiding OCI is the responsibility of both the contractor and contracting officer. A contracting officer's responsibilities regarding OCI are addressed in FAR 9.5. The CO is responsible for determining whether potential or significant potential OCI exists. If potential OCI exists, the CO must determine whether it can be avoided or mitigated. Under FAR §9.504(a), a CO is required to "identify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible [.]" This preliminary analysis does not have to be in writing. *Turner Const. Co., Inc. v. United States*, 645 F.3d 1377, 1386 (Fed. Cir. 2011). Under FAR §9.504(a)(2) upon learning of potential "significant" OCI the contracting officer must act to "avoid, neutralize, or mitigate" the OCI. For example, unequal access to information may be mitigated by creating firewalls within the organization to ensure that competitive information is walled off from contract employees preparing a proposal for a follow on contract. *Social Impact, Inc.* B-412941; B-41291.2, 2016 (Comp. Gen. July 8, 2016). When significant potential OCI exists that cannot be avoided or mitigated offerors can be disqualified from consideration for the new procurement. *VRC, Inc.* B-310100, 2007 (Comp. Gen. November 2, 2007).

The CO also has responsibilities under FAR § 9.504(e) after the proposal evaluation has been completed and an apparent successful offeror has been identified. FAR § 9.504(e) applies when an apparent successful offeror has been identified and the CO learns that the apparent successful offeror has OCI.  If the OCI cannot be avoided or mitigated, the offeror can be eliminated.  *See Netstar-1 Government Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 524 (2011). ("FAR § 9.504(e) prohibits a CO from awarding a contract if an OCI cannot be avoided or mitigated." (citation omitted)); *Cahaba Safeguard Administrators, LLC,* B–401842.2, 2010 (Comp .Gen. Jan. 25, 2010) (FAR §9.504(e) "contemplates a review after evaluations are completed and after an apparent awardee has been identified[.]").  In this connection, where a proposal is submitted by a joint venture, the significant potential OCI of one partner is imputed to the joint venture as a whole. *Matter of: HBI-GF, JV*, 2017 (Comp. Gen. Nov. 13, 2017).

III.    Discussion

The issue before the court is whether CO Helton's decision to disqualify A2JV based on her finding of significant potential OCI was in accordance with law and not arbitrary, capricious or an abuse of discretion.  The court has examined each of A2JV's arguments challenging the CO's disqualification decision and for the reasons set forth below each is rejected.

  a.  NASA's COs Did Not Violate FAR § 9.504(a)(1) or (2) by Failing to Act Sooner to Identify or Mitigate OCI

A2JV argues that NASA's COs violated FAR § 9.504(a)(1) and (2) by failing to notify Al-Razaq of its potential OCI sooner in the ABSS2 procurement process and by

not taking action to mitigate any potential significant OCI.  A2JV relies on the various

conversations Al-Razaq employees had with NASA's COs to show that NASA had

sufficient notice to have acted earlier.  In addition, A2JV relies on (1) the November

2015 email conversation between Mr. Hunter and CO James where Mr. Hunter informed

CO James that he would be attending the ABSS Industry Briefing, (2) the fact that NASA

knew that Al-Razaq and Adventus were forming a joint venture so as to bid on the

ABSS2 contract, and (3) the conversation Mary Dobbins had with CO Helton.

The government does not deny that NASA's COs were aware of Al-Razaq's

intentions of joining with Adventus to seek the ABSS2 contract.  However, contrary to

A2JV's contentions, the government maintains that NASA's COs understood from their

dealings with Al-Razaq personnel that Al-Razaq was not planning on using its employees

to prepare the A2JV proposal for the ABSS2 contract.  The government relies on Mr.

Hunter's conversation with CO Fenn, in which it was agreed that Al-Razaq team leaders

would not participate in preparing the A2JV proposal.  The government also relies on CO

Helton's conversation with Ms. Dobbins in which CO Helton made clear to an Al Razaq

team leader that Al-Razaq would need to create a firewall and seek permission from

NASA before using its employees to help with A2JV's proposal.  Finally, the

government relies on Al-Razaq's OCI plan which required Al-Razaq to identify

significant potential OCI to NASA. It is not disputed that Al Razaq never informed

NASA that it was using its past or present program managers to help prepare A2JV's

proposal for the ABSS2 contract.

Based on the foregoing, the government argues it did not have any reason to believe that Al-Razaq program managers would be working on the A2JV proposal and thus the government argues NASA did not violate FAR §9.504(a)(1) by failing to notify A2JV that Al-Razaq needed to mitigate significant potential OCI. From the government's perspective, potential OCI concerns were discussed with the program manager and a team leader and it was understood that Al-Razaq was not using its managers to prepare the A2JV ABSS2 contract bid proposal. The government asserts that NASA's COs would have reasonably understood that any potential OCI had been addressed. If that were not the case, the government contends that under Al-Razaq's OCI plan for the ABSS1contract, Al-Razaq should have informed NASA of its plans to use Al-Razaq managers on the ABSS1contract to prepare the A2JV ABSS2 bid.

The court agrees with the government that the NASA COs did not err by failing to act sooner to identify or mitigate the significant potential OCI. Contracting officers "have considerable discretion in determining whether a conflict is significant." *PAI Corp. v United States,* 61 F.3d 1347, 1352 (Fed. Cir. 2010). Here, based on the record of conversations between the NASA COs and Al-Razaq personnel, it was reasonable for NASA's COs not to find significant potential OCI until they learned that Mr. Hunter and possibly Mr. Lentz had participated in preparing A2JV's bid. Prior to Mr. Hunter and Mr. Lentz hand delivering the A2JV proposal to NASA, NASA's COs reasonably assumed that Al-Razaq's program managers (past and present) would not be participating in developing A2JV's proposal. For these same reasons, NASA's COs did not have an earlier obligation to mitigate significant potential OCI under FAR § 9.504(a)(2).

NASA's COs could only mitigate significant potential OCI after they learned of significant potential OCI. NASA only learned of Mr. Hunter's involvement when he told a NASA CO that he had participated in preparing A2JV's bid.[5]

      b.  CO Helton's determination that there was significant potential OCI connected with the preparation of A2JV's proposal was based on "hard facts" and her conclusion that the significant potential OCI could not be mitigated was supported

Next, the plaintiff argues that even if FAR § 9.504(a) was not triggered earlier and before A2JV's proposal was submitted, CO Helton's decision to disqualify A2JV was arbitrary and capricious because she did not identify any "hard facts" to support her determination that A2JV's bid was tainted by significant potential OCI or that the bid could taint the fairness of the ABSS2 procurement. Specifically, A2JV argues that CO Helton failed to provide any evidence that Mr. Hunter or Mr. Lentz actually accessed confidential business information about an A2JV competitor in order to give A2JV a competitive edge. A2JV asserts that CO Helton's significant potential OCI determination was based only on the suspicion that Mr. Hunter had actual access to information that would have given A2JV a competitive advantage. In this connection, A2JV argues that

---

[5] A2JV has suggested that CO Helton's decision to wait two months after A2JV submitted its proposal before the CO informed A2JV of the significant potential OCI was unreasonable. As discussed above, CO Helton did not inform A2JV of her disqualification decision until she had completed her investigation and determined that Al Razaq had access to confidential business information regarding an A2JV competitor. The court finds that this was not unreasonable. Moreover, because all proposals for the ABSS2 contract were already submitted, A2JV was not prejudiced by having to wait to wait two months later after Ms. Helton had learned of the significant potential OCI through her investigation.

the CO's reliance on Al-Razaq's access to Deltha-Critiques financial information (a competitor to A2JV) to support her finding of potential significant OCI was misplaced. According to A2JV the Deltha-Critiques information in Al- Razaq's files is almost ten years old and thus would not have given A2JV an advantage.

The government argues in response, that CO Helton's determination that A2JV's bid was tainted by significant potential OCI is supported by "hard facts" and not mere suspicion or innuendo.  Specifically, the government maintains that it was not necessary for CO Helton to find with certainty that Mr. Hunter or Mr. Lentz had examined or relied on sensitive business information to give A2JV an improper competitive edge.[6]  Rather, the government maintains that it is sufficient to show that Mr. Hunter's involvement as the current program manager on the ABSS1contract and Mr. Lentz's prior involvement as the past program manager which gave each access to sensitive documents in the ABSS1 contract file was sufficient to create the appearance of a significant potential OCI.

The court agrees with the government the fact that Al-Razaq's files had confidential business information regarding an A2JV competitor and the fact that Al-

---

[6] In this connection, the court acknowledges that CO Helton's reliance on FAR 3-101.1 to include Mr. Lentz, the former program manager, as a person with unequal access to sensitive information was incorrect but finds that the error is harmless. FAR 3-101.1 applies only to government employees.  However, as explained in a footnote in *Healthnet Federal Services, LLC, B-401652.3, B-401652.5,* 2009 (November 4, 2009), it is generally recognized that "[t]he unfair competitive advantage analysis stemming from a firm's use of a former government employee is virtually indistinguishable from the concerns and considerations that arise in protests where there is an allegation that a firm has gained an unfair competitive advantage arising from its unequal access to information as a result of an organizational conflict of interest. *See generally* FAR § 9.505 (general rules regarding organizational conflicts of interest). Mr. Lentz clearly fits within this category of employees.

Razaq failed to take action to prevent its managers from having access that information are "hard facts" showing a significant potential OCI.  It was the ability of Al Razaq's program managers to access sensitive information coupled with the fact that information relevant to an A2JV competitor was present in files that created significant potential OCI. These facts amount to more than mere "suspicion or innuendo" of significant potential OCI.  *See Turner* 645 F.3d at 1387.

The court further finds that A2JV's arguments challenging CO Helton's decision to disqualify A2JV rather than take less drastic action upon learning that A2JV had significant potential OCI are also without merit. The Federal Circuit has held that deference is owed to a CO's decision to disqualify a contractor based on the appearance of OCI. In *NKF Engineering, Inc. v. United States*, the Federal Circuit determined that the CO's decision to disqualify the protestor based on an appearance of OCI due to its retention of a government employee who had proprietary information about other potential bidders was reasonable and rational. 805 F.2d 372, 377 (Fed. Cir. 1986).

In this regard, the court finds that A2JV's disqualification is in many respects a problem of its own making.  As the government has argued, Al-Razaq had an OCI plan which required Al-Razaq to inform NASA of any potential OCI as early as possible if Al-Razaq perceived it may have potential OCI. The provision was designed to allow for NASA and Al-Razaq to work together to find a way to mitigate potential OCI.  By failing to bring Mr. Hunter's participation in preparing A2JV's bid proposal to NASA's attention sooner, i.e. as soon as he started working on the proposal and before proposals were due and submitted, CO Helton had very little flexibility in addressing the significant

potential OCI caused by unequal access to information.  Before the GAO, A2JV argued

that Mr. Hunter and Mr. Lentz had not accessed confidential business information, but

did not explain how A2JV had itself mitigated potential OCI concerns by walling off Al-

Razaq's employees to avoid unequal access to information claims. The GAO found that

in such circumstances A2JV had failed to show that contracting officer's decision was

unreasonable. AR 1638 n.13.  This court concurs with the GAO's reasoning.

c.   A2JV's Reliance on FAR § 9.504(e) is misplaced

Finally, A2JV argues that the CO Helton's decision should be set aside because

she failed to comply with FAR § 9.504(e).  As noted, FAR § 9.504(e) states that "[t]he

contracting officer shall award the contract to the apparent successful offeror unless a

conflict of interest is determined to exist that cannot be avoided or mitigated. Before

determining to withhold award based on conflict of interest considerations, the

contracting officer shall notify the contractor, provide the reasons therefor, and allow the

contractor a reasonable opportunity to respond."  A2JV argues that CO Helton failed to

consider whether the OCI she identified could be avoided or mitigated before award and

further she failed to give A2JV a reasonable opportunity to respond to her

disqualification determination as required by FAR § 9.504(e) .

The government argues that FAR § 9.504(e) is not applicable because it applies

only when the apparent successful offeror is disqualified and A2JV was never identified

as the "apparent successful offeror."  FAR § 9.504(e).

Again, the court agrees with the government. FAR §9.504(e) applies only when an

apparent successful offeror has been identified. A2JV was not identified as the apparent

successful offeror and thus the provision was not triggered.[7]  In *NetStar Consulting, Inc.,* the court concluded that "FAR §9.504(e) prohibits a CO from awarding a contract if an OCI cannot be avoided or mitigated." 101 Fed. Cl. at 524; *see also Cahaba Safeguard Administrators*, LLC, B–401842.2, 2010  (Comp .Gen. Jan. 25, 2010).  Here, A2JV was disqualified before proposals were evaluated.  As such, A2JV's reliance on FAR § 9.504(e) is misplaced and its arguments based on NASA's failure to comply with its requirements are rejected.

## CONCLUSION

Accordingly the plaintiff's motion for judgment on the administrative record is **DENIED** and the government's cross motion for judgment on the administrative record is **GRANTED**.  No costs.  The clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[7] A2JV's reliance on *Informatics Corp. v. United States*, 40 Fed. Cl. 508 (1998) and *DSD Laboratories, Inc. v. United States*, 46 Fed. Cl. 467 (2000) is misplaced. First, *Informatics Corp.* is a post-award bid protest and thus it is inapplicable to this case. 46 Fed. Cl. at 512.  Second, to the extent that the court in *DSD Laboratories, Inc.* applied FAR § 9.504(e) to a pre-award bid protest, the court respectfully disagrees.  For the reasons stated above, FAR § 9.504(e) is only applicable after a successful offeror has been identified by its plain terms.