# In the United States Court of Federal Claims

No. 17-835C
(Filed: November 21, 2019)*
*Opinion Originally Filed Under Seal November 18, 2019

|  |  |  |
|---|---|---|
| A SQUARED JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | Bid Protest; Rational Procurement |
| | ) | Cancellation; Lack of Bad Faith |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Joseph P. Dirik*, Dallas, TX, for plaintiff.

*Borislav Kushnir*, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Jerry L. Seemann*, National Aeronautics & Space Administration, Office of Chief Counsel, Washington, D.C., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*.

Plaintiff, A Squared Joint Venture ("A2JV"), protests the National Aeronautics and Space Administration's ("NASA or "agency"") decision to cancel a procurement for acquisition and business support services. This bid protest has a long and protracted history which is described briefly below. Because the court finds that NASA had a rational basis for cancelling the subject solicitation and because A2JV has failed to demonstrate that NASA acted in bad faith, the plaintiff's motion challenging NASA's decision is **DENIED** and the defendant's motion for judgment on the administrative

record is **GRANTED**. The court also **DENIES AS MOOT** plaintiff's motion to supplement the administrative record.

## I.      BACKGROUND FACTS[1]

### A.      NASA's Procurement of Acquisition and Business Support Services at Marshall Space Flight Center ("MSFC")

NASA awarded contract no. NNM11AA30C for acquisition and business support services at MSFC ("ABSS1 contract") to Al-Razaq Computing Services ("Al-Razaq") on May 1, 2011. AR46. The ABSS1 contract included business support services for supporting the preparation, analysis, and verification of budget and financial data. AR108-10. The ABSS1 contract also included acquisition support services such as acquisition planning, solicitation preparation, contract award, performance, payment, and closeout. AR110-12. The ABSS1 contract had a one-year base period and five option periods, allowing NASA to retain Al-Razaq until August 31, 2016. AR59.

On February 16, 2016, NASA issued request for proposal no. NNM16534124R for follow-on acquisition and business support services at MSFC ("ABSS2 RFP"). AR321. The follow-on contract was planned for a base period of one year, with five additional option years. AR326. A2JV was established to meet the criteria for the acquisition. Importantly, Al-Razaq, the incumbent, is one of the partners in A2JV.

NASA received twenty proposals in response to the ABSS2 RFP on March 18, 2016. AR3463-64. On May 9, 2016, NASA Contracting Officer ("CO") Ketela K. Helton

---

[1] The facts relevant to the cancellation decision together with relevant background facts from the court's earlier decisions are taken from the full administrative record that was presented to the court.

eliminated A2JV's proposal from the ABSS2 competition based on her conclusion that A2JV had an organizational conflict of interest. She determined that the Al-Razaq personnel that had worked on the A2JV proposal had access to the confidential business information of potential A2JV competitors. A2JV filed a protest of its elimination with the Government Accountability Office ("GAO"). Third Am. Compl. ¶ 42, ECF No. 130. That protest was dismissed as untimely. AR1628-38. Ten months after the GAO's dismissal, A2JV filed this action. *See* Compl., ECF No. 1.

While A2JV's action was pending in this court, NASA proceeded to have discussions with ABSS2 offerors within the competitive range, and, on June 30, 2017, NASA selected Paragon TEC, Inc. ("Paragon") for award of the ABSS2 contract. AR3465. Following the award, Will Technology, Inc. ("WTI"), another offeror in the competitive range, challenged Paragon's selection before the GAO. *Id.* Although WTI ultimately withdrew its protest, NASA decided that it should reevaluate Paragon's proposal. *Id.* After reevaluating Paragon's proposal, NASA selected a third offeror within the competitive range, Canvas, Inc. ("Canvas"), for award of the ABSS2 contract. *Id.*

Both WTI and Paragon protested Canvas's selection before the GAO. *Id.* The GAO sustained these protests in part and recommended that NASA reevaluate all of the proposals within the competitive range. *Id.* NASA followed the GAO's recommendation and reevaluated all the proposals. *Id.* On October 28, 2018, NASA reaffirmed Canvas's selection for award of the ABSS2 contract. *Id.*

Meanwhile, this case was continuing, *see id.*, and on December 21, 2018 this court determined that NASA's basis for disqualifying A2JV was not supported and ordered

briefing on the appropriateness of injunctive relief. Order, ECF No. 113. To address this court's order, NASA decided not to issue a final source selection decision. Before it could respond to the court's order regarding injunctive relief, however, NASA lost its funding for the procurement as part of the December 2018 government shutdown. Def.'s Mot. for Stay, ECF No. 114. Funding was not restored until January 25, 2019. AR3465.

### B.    NASA's Decision to Cancel the ABSS2 Procurement

NASA decided to cancel the ABSS2 procurement on March 12, 2019. The formal decision was issued by NASA CO Hervie B. Williford. *See* AR3463-68. In his decision, CO Williford provided a history of the ABSS1 contract at MSFC, and a summary of the lengthy ABSS2 procurement process. AR3463-66. CO Williford also provided an overview of NASA's strategy for contract centralization, which is supported by other documents in the record. AR3465-66. In April 2016, NASA's Office of Procurement ("OP") developed an implementation plan for contract centralization. *See* AR2630-2765. Phase II of that plan involved the assessment and centralization of procurement areas within the OP's domain, which was "chosen as one of three Phase II projects." AR3346. The OP's domain includes all acquisition support services and financial support services, both of which were slated for "agency-wide" procurements whereby "[o]ne OP location procures for all Centers." AR3402. To accomplish Phase II for acquisition support services, NASA issued solicitation no. 80NSSC18R0025 on February 15, 2018. AR2771. This solicitation was designed to result in a contract that provides a broad range of acquisition support services on a NASA-wide level. AR2838-39 (section titled "Scope of Work"). As for business/financial support services, NASA intends to award an agency-

wide contract for these services, in accordance with its broader centralization strategy, by the end of 2020. *See* AR3467, AR3429. On September 11, 2018, NASA published a Procurement Information Circular addressing the agency's approach to acquisition strategies. *See* AR3484-88. According to the Circular, "[f]or any new acquisition above the simplified acquisition threshold (SAT), regardless of anticipated contract vehicle," procurement officers were required to "coordinate the individual requirement(s) with the Procurement Portfolio Manager and Enterprise Requirement Manager." AR3485. The Circular also provides that "[c]enters should wait for direction from the Procurement Portfolio Manager prior to continuing with acquisition planning activities in order to avoid the potential for revisions to the instant acquisition . . . due to necessary steps and considerations required to implement an enterprise procurement strategy." *Id.*

CO Williford then gave two basic reasons for cancelling the ABSS2 procurement. First, CO Williford explained that the acquisition support services aspect of the ABSS2 RFP should be incorporated into the ongoing procurement for these services on an agency-wide basis (*i.e.* solicitation no. 80NSCC18R0025, issued on February 15, 2018, in keeping with NASA's strategy for contract centralization). AR3467. Second, CO Williford explained that without the acquisition support component of the ABSS2 contract, a separate ABSS2 contract for only business/financial support services was not viable. *Id.* Thus, he determined that NASA should instead find a short-term solution for the business/financial support services aspect of the ABSS2 RFP while NASA continued to implement its program of procuring business and financial support services on an agency-wide basis. *Id.* In keeping with the Procurement Information Circular, CO

Williford made his decisions "in coordination with the Enterprise Requirement Manager and Procurement Portfolio Manager." *Id.* Having determined that the "[u]se of agency-wide instruments will benefit the Government by consolidating similar requirements across the agency to ensure consistency of support at lower overall prices," he concluded that "continuation of the ABSS2 RFP is not considered to be in the best interest of the Government." *Id.* After CO Williford issued his formal cancellation decision, NASA notified the ABSS2 offerors within the competitive range. AR3469-83.

Following the cancellation decision, A2JV filed in this court a third amended complaint on April 15, 2019, challenging the cancellation of the ABSS2 procurement. The government filed a motion to dismiss the third amended complaint in part. *See* Def.'s Mot. to Dismiss, ECF No. 131. The court granted the government's motion in part, dismissing A2JV's seventh prayer for relief as unripe and third, eighth, and ninth prayers for relief as moot. *See* June 24, 2019 Order, ECF No. 135.

On July 12, 2019, the government filed the administrative record regarding NASA's decision to cancel the ABSS2 procurement. *See* Def.'s Notice of Filing of Admin. Record, ECF No. 139. A2JV seeks to supplement that administrative record, and the government opposes A2JV's request. *See* Pl.'s Mot. to Suppl., ECF No. 142; Def.'s Resp., ECF No. 143. In its motion to supplement, A2JV seeks to supplement the record with a declaration from an Al-Razaq employee to the effect that NASA would be better off continuing to use Al-Razaq (which is still performing the functions sought under the ABSS2 procurement) rather than seeking other options. *See* Pl.'s Mot. to Suppl. at 2-5. The government responds that the agency's post-cancellation plans are not ripe for

review and Al-Razaq's opinions on the matter are not relevant to the cancellation

decision. *See* Def.'s Resp. at 6-7. A2JV also filed a motion for judgment on the

administrative record on August 8, 2019, Pl.'s Mot., ECF No. 145, and the government

has filed a cross-motion, Def.'s Cross-Mot., ECF No. 148. Briefing on all motions was

completed on September 11, 2019, and oral argument was held on October 22, 2019.

## II.    DISCUSSION

### A.    Standards of Review[2]

Under the Tucker Act, 28 U.S.C. § 1491(b)(4), the court reviews bid protests

under § 706(2)(A) of the Administrative Procedure Act. Under this standard, an agency's

procurement decision must be upheld unless it is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also PAI*

*Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (quoting *Bannum, Inc. v.*

*United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005)). "Accordingly, procurement

decisions are subject to a 'highly deferential rational basis review.'" *PAI Corp.*, 614 F.3d

at 1351 (quoting *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir.

2008)). "Applying this highly deferential standard, the court must sustain an agency

action unless the action does not 'evince[] rational reasoning and consideration of

---

[2] The court understands that the government challenges A2JV's standing to object to the ABSS2 cancellation on the grounds that A2JV was properly eliminated from the competition for the ABSS2 contract and thus has no stake in the cancellation decision. *See* Def.'s Cross-Mot. at 11 n.7. As the government recognizes, *id.*, the court has rejected the government's position regarding the elimination of A2JV from consideration in its prior decision in this case. Because the court has found A2JV was entitled to have its bid for the ABSS2 contract considered, the court finds that A2JV has standing as an interested party to challenge the cancellation of the ABSS2 contract.

relevant factors.'" *Id.* (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)) (alterations in original). Under Federal Circuit precedent, the court may only set aside the agency's procurement action if either "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009). A court evaluating a challenge on the first ground must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.*; *see also Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018).

Agency procurement decisions are entitled to a "presumption of regularity," *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001), and contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them in the procurement process," *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotations omitted). Therefore, "a court is not to substitute its judgment for that of the agency." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1376 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983)).

Regarding the cancellation of procurements, the following standards also apply. First, because the ABSS2 RFP was a "competitive negotiated acquisition . . . conducted in accordance with [Federal Acquisition Regulation ("FAR")] 15.3," AR594, "[t]he source selection authority [has the authority to] reject all proposals received in response

8

to a solicitation, if doing so is in the best interest of the Government," 48 C.F.R. § 15.305(b). This court has held that "the cancellation of an RFP is [] given a great degree of discretion." *DCMS-ISA, Inc. v. United States*, 84 Fed. Cl. 501, 511 (2008). "Given the great degree of discretion afforded an agency in deciding to cancel an RFP, this court has held that it must merely find that the agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* (internal quotations and alterations omitted); *see also Croman Corp. v. United States*, 724 F.3d 1357, 1363-65 (Fed. Cir. 2013) (applying the deferential rational basis test to an agency's decision to cancel a solicitation); *Inverness Techs., Inc. v. United States*, 141 Fed. Cl. 243, 249-51 (2019) (same); *FMS Inv. Corp. v. United States*, 139 Fed. Cl. 221, 224-25, *amended*, 139 Fed. Cl. 439, 440 (2018) (same).

Tested by these standards, NASA's decision to cancel the ABSS2 procurement must be upheld.

## B.   NASA's Decision to Cancel the ABSS2 Procurement Was Coherent and Reasonable

As discussed above, before cancelling the ABSS2 procurement, CO Williford considered the need for acquisition and business support services at MSFC, the protests that delayed implementation of the ABSS2 procurement, the fact that the ABSS2 procurement proposals were close to three years old, and NASA's strategy for centralizing its acquisition and business services. AR3463-66. He then explained the rationale for cancelling the ABSS2 procurement. First, as for the acquisition support services aspect of the ABSS2 RFP, CO Williford determined that the acquisition support

services should be incorporated into an ongoing procurement for those services on an agency-wide basis. AR3467. Second, CO Williford explained that eliminating acquisition support services from the ABSS2 RFP while leaving the business/financial support services component was not a viable option "because such a change would result in a fundamental change to the overall [ABSS2] requirement." *Id.* Thus, he determined that NASA should find a short-term solution for the business/financial support services aspect of the ABSS2 RFP while the agency continues its long-term efforts to procure these types of services on an agency-wide basis. *Id.* CO Williford further determined that "[u]se of agency-wide instruments will benefit the Government by consolidating similar requirements across the agency to ensure consistency of support at lower overall prices." *Id.* For these reasons, CO Williford concluded that cancelling the ABSS2 procurement was in the "Government's best interest." AR3468.

The government argues that NASA's decision to cancel the ABSS2 procurement comports with the Federal Circuit's requirement for "a coherent and reasonable explanation of [CO Williford's] exercise of discretion," *Dell Fed. Sys.*, 906 F.3d at 992, and thus the decision must be affirmed. Def.'s Cross-Mot. at 13. A2JV contends that NASA's decision to cancel the ABSS2 procurement was not reasonable or coherent. Rather, A2JV argues that the nearly three-year delay in awarding the ABSS2 contract was not a valid reason for cancelling the ABSS2 procurement. A2JV further contends that CO Williford's concern about the continued viability of ABSS2 proposals, nearly three years after the proposals were submitted, was "unsupported." Pl.'s Mot. at 15-16. Finally, A2JV argues that "nothing in the [agency-wide centralization] initiatives

10

documents . . . explain[s] why NASA needed to cancel the ABSS2 RFP in March 2019, or at any fixed time for that matter." *Id.* at 13.

For the reasons that follow, the court agrees with the government and finds that the agency's decision to cancel the solicitation was rational and reasonable. First, it was rational and reasonable for CO Williford to conclude that the history of protests challenging the ABSS2 procurement at the GAO and before this court (including the 35-day government shutdown) was a sufficient ground to reexamine the rationale for the ABSS2 contract. AR3466. The court agrees that it was reasonable for NASA to question the continued viability of ABSS2 proposals, submitted almost three years earlier. *Id.* Second, the court agrees with the government, given NASA's timeline for finalizing an agency-wide approach for both acquisition support services and business/financial support services, that NASA reasonably decided to re-examine whether the ABSS2 contract was consistent with NASA's agency-wide procurement policy goals. The record makes clear that NASA no longer wanted to procure acquisition support services specifically for MSFC. AR3467. The record also demonstrates that NASA had already issued a solicitation for agency-wide acquisition support services, and that a contract award was planned for March of 2019. *Id.* The record further shows that the resulting agency-wide contract was going to "contain[] the appropriate scope and ceiling" necessary for acquisition support services at MSFC. *Id.* Thus, CO Williford rationally determined that procuring acquisition support services specifically for MSFC would not be in the best interest of the Government. *Id.* Once an agency determines that cancellation

would be "in the best interest of the Government," 48 C.F.R. § 15.305(b), the agency is free to cancel the solicitation whenever it sees fit to do so.

A2JV's contention that the agency-wide solicitation might not meet MSFC's needs is without merit. The CO determined, after reviewing the ABSS2 RFP and the agency-wide solicitation, that the agency-wide solicitation "contains the appropriate scope and ceiling" and would meet MSFC's needs. AR3467. Moreover, CO Williford's decision was reviewed by NASA's procurement office, which concurred with his conclusion.[3] AR3467. A2JV's disagreement with NASA's conclusion that it can obtain the services it seeks with an agency-wide solicitation does not make CO Williford's decision unreasonable. This court cannot substitute its judgment for that of CO Williford's. *See Ala. Aircraft*, 586 F.3d at 1376. CO Williford provided a coherent and reasonable explanation for why the agency-wide procurement was appropriate, and this court "must sustain that decision—even if the court might have come to a different conclusion." *Inverness Techs.*, 141 Fed. Cl. at 253.

CO Williford also provided a coherent and reasonable explanation for cancelling the business/financial support services aspect of the ABSS2 procurement. AR3467. He explained that decoupling acquisition support services from business/financial support services would "result in a fundamental change to the overall [ABSS2] requirement," which "would have changed the field of competitors by opening up the competition to

---

[3] A2JV asserts that CO Williford did not coordinate his decision to cancel the ABSS2 procurement with NASA's Procurement Portfolio Manager and Enterprise Requirement Manager, as provided in the Procurement Information Circular. Pl.'s Mot. at 14. This assertion is plainly erroneous, as CO Williford specifically noted his coordination with these individuals in the cancellation decision. AR3467.

additional businesses who were not able to (or perhaps chose not to) compete when both requirements were present." *Id.* CO Williford explained why a significant modification to the ABSS2 RFP would likely qualify as a cardinal change and would thus require a re-solicitation. *See Golden Mfg. Co. v. United States*, 107 Fed. Cl. 264, 275 (2012). CO Williford thus concluded that proceeding with only the business/financial support services aspect of the ABSS2 RFP was "not considered to be a reasonable and fair alternative" to cancellation. AR3467.

CO Williford also explained that the long-term goal for business/financial support services remains "the inclusion of this requirement in an agency-wide or regional strategy resulting from NASA's ongoing [procurement centralization] process." *Id.* The timeline for accomplishing this long-term goal is the end of 2020. *See id.;* AR3429. CO Williford then noted several short-term options that MSFC can use to meet its needs until an agency-wide contract is finalized, including Al-Razaq's continued performance until the end of September 2019 and then another contracting vehicle managed at the Johnson Space Center ("JSC"). AR 3467. Combined, CO Williford concluded that these short-term options would work to provide business/financial support services at MSFC until an appropriate agency-wide contract is in place. *Id.* CO Williford's decision together with his explanation for cancelling the business/financial support services component of the ABSS2 procurement was coherent, reasonable, and within the bounds of his broad discretion.

A2JV's reliance on *FMS Investment Corp. v. United States*, 139 Fed. Cl. 221 (2018) to argue otherwise is misplaced. In *FMS*, this court found that the Department of

Education's decision to cancel a solicitation was irrational because it was based on a new policy first announced in the cancellation notice itself, was supported by a "slipshod" record, and contained no timeline for implementing the new policy. *Id.* at 225. Here, in contrast, NASA has submitted a robust record, its efforts to centralize procurements predate by years the cancellation of the ABSS2 RFP, and NASA has a specific plan for agency-wide acquisition support services and a timeline for agency-wide business/financial support services. *See* AR2623-29, AR2771-3344, AR3429, AR3467. Likewise, A2JV's reliance on *MORI Associates, Inc. v. United States*, 102 Fed. Cl. 503, 546 (2011) is misplaced. In *MORI Associates, Inc.,* this court held that the cancellation of a procurement was arbitrary and capricious because of, in part, "factual and analytical gaps found in the administrative record," including "no support" for the reason given for the cancellation. Here, as explained above, CO Williford's decision was supported, coherent, and reasonable.

## C.    CO Williford Did Not Fail to Consider Important Aspects of the Cancellation Decision

A2JV also argues that CO Williford's cancellation decision should be set aside because CO Williford failed to consider important aspects of the cancellation decision including: the availability of other contracting vehicles, Pl.'s Mot. at 14, the impact on small businesses and the local economy, *id.*, the possible advantages to bundling acquisition support services with business/financial support services, *id.* at 17, the possible disadvantages to multiple phase-in and phase-out periods, *id.* at 23, and the availability of legal support services at MSFC, *id.* The Federal Circuit has explained that

an agency's procurement decision may be deemed arbitrary and capricious if it "entirely failed to consider an important aspect of the problem." *Ala. Aircraft*, 586 F.3d at 1375. But "[a]n 'important aspect of the problem' is not simply whatever plaintiffs would like the [agency] to consider." *State of N.C. Bus. Enters. Program v. United States*, 110 Fed. Cl. 354, 363 (2013). Instead, "[w]hether an agency has overlooked 'an important aspect of the problem' . . . turns on what a relevant substantive statute makes 'important,'" because "[i]n law, unlike religion or philosophy, there is nothing which is necessarily important or relevant." *Id.* (quoting *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)). Thus, in the bid protest context, "what constitutes an 'important aspect of the problem' depends on what the substantive law deems 'important.'" *Id.* As this court observed in *State of North Carolina*, an "important aspect of the problem" must be an aspect deemed "important" by some applicable source of substantive law. 110 Fed. Cl. at 363.

A2JV identifies only one possible source of law: an overview of strategic sourcing within the OP's implementation plan, which provides that procurement offices review lists of existing contracts for applicability prior to initiating a new procurement action. Pl.'s Mot. at 14 (citing AR2653-54). But the introduction to the cited overview explains that its purpose is "to identify best practices and tools across the NASA Enterprise that will enable a more strategic approach to managing the spend in NASA procurement," and identifies the strategic sources plan as "one of many procurement tools available to the acquisition community when developing an acquisition strategy."

AR2645. As such, the court concludes that CO Williford was not *required* to address these issues before reaching his decision.

Contrary to A2JV's argument, CO Williford also was not required to address the "pros and cons" of various procurement choices before reaching his cancellation decision. Pl.'s Mot. at 18. Rather, CO Williford was required only to set forth a general approach to a new acquisition plan, which he did. *See Inverness Techs.*, 141 Fed. Cl. at 251. For this reason, A2JV's challenges regarding the possible use of the JSC contract after exhausting Al-Razaq's ABSS1 contract are without merit. CO Williford made a technical judgment about MSFC's needs when he concluded that the JSC contract was available for use by MSFC as a short-term solution. This court will not substitute its judgment for that of CO Williford. *See Ala. Aircraft*, 586 F.3d at 1376; *Inverness Techs.*, 141 Fed. Cl. at 252-53. CO Williford identified a specific short-term plan for business/financial support services at MSFC (*i.e.*, the ABSS1 contract and the JSC contract), as well as a long-term timeline for procuring these services on an agency-wide basis (*i.e.*, by the end of 2020). AR3467. This post-cancellation plan satisfies rational basis review. *See Inverness Techs.*, 141 Fed. Cl. at 251 (a cancellation decision that "sets forth a general approach for a new acquisition plan" is enough to satisfy rational basis review). As this court has previously held in this case, which post-cancellation procurement mechanism is best may be challenged when a specific procurement mechanism is implemented by NASA.[4]

---

[4] This court has dismissed as unripe all claims and allegations related to NASA's potential post-cancellation procurement plan. *See* June 24, 2019 Order at 3, ECF No. 135. For this reason, A2JV's motion to supplement the administrative record, ECF No. 142, with a declaration and

### D.     A2JV's Bad Faith Claim Is Not Supported

Lastly, A2JV argues that CO Williford's decision to cancel the ABSS2

procurement was done in bad faith solely to avoid an adverse decision in this case,

relying on the fact that NASA's decision to cancel the ABSS2 procurement came after

this court's prior ruling rejecting NASA's reasons for disqualifying A2JV's proposal.

Pl.'s Mot. at 24; *see also id.* at 16 ("It is clear that CO Williford is only trying to justify a

decision he made for other reasons by pure speculation."); Pl.'s Resp. & Reply at 7, ECF

No. 149. The court finds that A2JV's bad faith claim is inconsistent with the record,

which, for all of the reasons discussed above, demonstrates that the cancellation decision

was based on the imminent award of an agency-wide contract for acquisition support

services, as well as the fact that the proposals for the ABSS2 contract were three years

old and that a procurement for business/financial services alone would likely require a

new procurement. In addition, as CO Williford explained, a number of events other than

this litigation, including unrelated GAO protests and a partial government shutdown,

created a need to review the ABSS2 procurement. AR3466. The record thus establishes

that it was a change in many circumstances – not this litigation alone – that led CO

Williford to cancel the ABSS2 RFP. AR3463-68.

It is well-established that agency actions are afforded a "presumption of

regularity" in this court. *Emery Worldwide Airlines*, 264 F.3d at 1085. Given this

presumption and the record presented, A2JV's reliance on a partial timeline of events

---

attachments that, in A2JV's view, establish what NASA should do after cancelling the ABSS2
RFP, *see id.* at 2, is **DENIED AS MOOT**.

surrounding the ABSS2 procurement has failed to demonstrate that CO Williford

cancelled the ABSS2 procurement for anything other than the well-explained reasons he

provided.

## CONCLUSION

For these reasons, the court **GRANTS** the defendant's cross-motion for judgment

on the administrative record and **DENIES** A2JV's motion for judgment on the

administrative record. A2JV's motion to supplement the record is **DENIED AS MOOT.**

The Clerk shall enter judgment consistent with this opinion.

**IT IS SO ORDERED**.


s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge