# In the United States Court of Federal Claims

No. 17-835C
(Filed: July 1, 2020)

| | |
|---|---|
| A SQUARED JOINT VENTURE, | Bid Preparation and Proposal Costs; Causation; Equal Access to Justice Act; Prevailing Party |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*Joseph P. Dirik*, Dallas, TX, for plaintiff.

*Borislav Kushnir*, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Jerry L. Seemann*, National Aeronautics & Space Administration, Office of Chief Counsel, Washington, D.C., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*.

Pending before the court in this bid protest case is plaintiff A Squared Joint Venture's (A2JV) motion for bid preparation and proposal costs under the Tucker Act, 28 U.S.C. § 1491, and for attorney's fees, expenses, and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. This case has had a long and complex history ultimately resulting in this court upholding the National Aeronautics and Space Administration's (NASA) decision to cancel the procurement that forms the backdrop of this motion. *See A Squared Joint Venture v. United States*, 145 Fed. Cl. 676, 678 (2019).

As discussed below, the court finds that A2JV is not entitled to the bid preparation and proposal costs it incurred in connection with the cancelled procurement because A2JV has failed to show that NASA's legal error caused it to unnecessarily incur those costs. In addition, because the court finds that A2JV is not a prevailing party for purposes of EAJA, the court finds that A2JV is not entitled to attorney's fees. For these reasons, A2JV's motion is **DENIED**.

I.  BACKGROUND

The dispute that led to this bid protest stems from NASA's May 1, 2011 award of a contract for acquisition and business support services at the Marshall Space Flight Center (ABSS1 Contract) to Al-Razaq Computing Services (Al-Razaq). *See A Squared Joint Venture v. United States*, 136 Fed. Cl. 321, 325 (2018) (*A2JV I*). Near the conclusion of the ABSS1 Contract, NASA, on February 16, 2016, issued a request for proposals for a follow-on acquisition and business support services contract (ABSS2 RFP), which NASA planned as a set-aside for women owned small businesses. *Id.* Al-Razaq and another company, Adventus Technologies, Inc., created A2JV to submit a proposal in response to the ABSS2 RFP. *Id.* A2JV submitted a timely proposal on March 18, 2016. *Id.* at 326.

On May 9, 2016, NASA "disqualified [A2JV's proposal] because of a significant potential [organizational conflict of interest (OCI)] that tainted the integrity of the ABSS2 competition." *Id.* NASA disqualified A2JV's proposal because: (1) Al-Razaq employees who worked on A2JV's proposal "had access to commercial and financial information that was confidential and contained information that could have given A2JV an unfair

2

competitive advantage," and (2) Al-Razaq failed to comply with "a contractual requirement in the ABSS1 [C]ontract to screen future work for OCI and disclose any identified or potential OCI to NASA." *Id.* at 326-27.

On June 20, 2017, A2JV challenged in this court NASA's disqualification decision. *See* Compl., ECF No. 1. The court initially upheld NASA's OCI disqualification decision, concluding based on the record provided that Al-Razaq's program managers had access to sensitive information in files maintained by Al-Razaq, which included information relevant to an A2JV competitor. *A2JV I*, 136 Fed. Cl. at 330-31. When the court learned from briefing on A2JV's motion for reconsideration that Al-Razaq managers did not have the right to access any of the files with sensitive information regarding potential A2JV competitors, the court granted reconsideration. *A Squared Joint Venture v. United States*, No. 17-835C, 2018 WL 2016632, at *1 (Fed. Cl. May 1, 2018) (*A2JV II*). The court remanded the OCI issue back to NASA "to ensure there are 'hard facts' to support the [contracting officer's] disqualification of A2JV" on OCI grounds. *Id.*

On remand, NASA's contracting officer conducted "an independent review of the ABSS1 [C]ontract files" and concluded that Al-Razaq employees, while not authorized to examine certain files, "could by virtue of location access hard copies of contract files co-located with NASA employees overseeing contracts of potential A2JV competitors." Nov. 29, 2018 Order at 3-4, ECF No. 104. The court found that this explanation was "not sufficient to support NASA's decision to disqualify A2JV from the competition." *Id.* at 4. The court held that Al-Razaq's mere ability to access confidential, competition-

3

sensitive information based on location did not establish the "hard facts" necessary for a finding of significant potential OCI. *See id.* at 8-10.

The government moved for reconsideration, arguing, inter alia, that the "hard facts" standard did not apply to an agency's OCI determination and that the court improperly held that the mere appearance of impropriety was insufficient to find significant potential OCI. *See* Def.'s Mot. for Recons., ECF No. 106. The court denied in relevant part the government's motion. Dec. 21, 2018 Order, ECF No. 113. The court then instructed the parties to brief the propriety and scope of injunctive relief. *Id.* at 12.

The parties did not, however, have an opportunity to submit any briefing on injunctive relief. On March 12, 2019, NASA formally decided to cancel the ABSS2 solicitation in favor of a longstanding centralized procurement strategy. *A Squared Joint Venture v. United States*, 145 Fed. Cl. 676, 679 (2019) (*A2JV III*). A2JV challenged the cancellation decision in an amended complaint. *Id.* at 680. After briefing, the court upheld NASA's cancellation decision. *See id.* at 681-84. The court also rejected A2JV's claim that NASA cancelled the ABSS2 procurement to avoid an adverse decision in this case, finding instead that "a number of events other than this litigation, including unrelated GAO protests and a partial government shutdown, created a need to review the ABSS2 procurement." *Id.* at 684.

Thereafter, the court denied A2JV's motion to reconsider the court's opinion upholding the cancellation decision. *See A Squared Joint Venture v. United States*, 146 Fed. Cl. 705, 713 (2020) (*A2JV IV*). The court, however, held that the case should not be closed, and that "A2JV be permitted to pursue bid preparation costs based on [NASA's

4

earlier] disqualification decision." *Id.* at 712. This was because the court, before determining whether the cancellation decision was proper, had held that the cancellation decision had not mooted A2JV's claims for declaratory relief based on the disqualification decision. Specifically, the court held that A2JV "still ha[d] a claim for bid preparation costs" based on the disqualification decision, and that the effect of the cancellation decision on the declaratory claims was still uncertain at that stage of the case. *See A Squared Joint Venture v. United States*, No. 17-835C, 2019 WL 2591205, at *3 (Fed. Cl. June 24, 2019). The court stated that any relief that should be issued with regard to the disqualification decision would be dealt with after the court determined whether the cancellation decision was justified. *See A2JV IV*, 146 Fed. Cl. at 712.

Accordingly, A2JV filed the pending motion for bid preparation and proposal costs, as well as for attorney's fees, expenses, and costs under EAJA,[1] on March 2, 2020. Pl.'s Mot. at 1, ECF No. 175. A2JV argues that it is entitled to bid preparation and proposal costs and attorney's fees because it obtained "some of the relief it sought in this matter that materially altered the legal relationship between the parties," in light of the court's declaratory ruling that NASA's disqualification decision was arbitrary and capricious. *Id.* at 1, 8, 13-14.

---

[1] On February 4, 2020, the court set a schedule for A2JV's motion for bid preparation and proposal costs "and/or attorney's fees under 28 U.S.C. § 2412." Order at 2, ECF No. 172. Applications for EAJA fees have been considered by this court as premature when they are filed prior to a final judgment. *See Heger v. United States*, 114 Fed. Cl. 204, 208 (2014). However, given the court's invitation in the February 4, 2020 scheduling order and no objection regarding timeliness from the government, the court considers A2JV's EAJA application as one for interim EAJA fees, and will address it. *See id.* at 209 (discussing the availability of interim fees).

5

In response, the government argues that A2JV is not entitled to bid preparation and proposal costs because NASA's legal error – the disqualification decision – did not cause A2JV's ultimate inability to become an awardee. Def.'s Resp. at 5-10, ECF No. 176. The government further contends that most of A2JV's claimed bid preparation and proposal costs are not reasonable, and some are not allowable. *Id.* at 10-17. Finally, the government argues that A2JV is not entitled to attorney's fees because A2JV is not a prevailing party and the government's position regarding A2JV's disqualification was substantially justified. *Id.* at 18-23.

In reply, A2JV argues that this court recognized that A2JV had been prejudiced despite the cancellation and that A2JV need not show that it could have become an awardee to qualify for bid preparation and proposal costs. Pl.'s Reply at 2-5, ECF No. 179. A2JV further contends that its costs are reasonable and allocable. *Id.* at 8-12. Finally, A2JV reiterates that is entitled to recover attorney's fees because it is a prevailing party and because the government's position was not substantially justified. *Id.* at 12-16.

## II.  DISCUSSION

The court first turns to A2JV's request for bid preparation and proposal costs, and then to the request for attorney's fees and costs. For the reasons that follow, the court denies both.

### A. A2JV Is Not Entitled to Bid Preparation and Proposal Costs Because the Disqualification Decision Did Not Cause A2JV's Ultimate Inability to Become an Awardee

Under the Tucker Act, this court in bid protest cases "may award any relief that the court considers proper . . . except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). "Bid preparation and proposal costs in essence are damages awarded to a protestor to provide relief for its wasted efforts in bidding on an unfair, erroneous, or illegal procurement." *Q Integrated Cos., LLC v. United States*, 132 Fed. Cl. 638, 642 (2017). Bid preparation and proposal costs "are recoverable only if three conditions are satisfied: (i) the agency has committed a prejudicial error in conducting the procurement; (ii) that error caused the protester to incur unnecessarily bid preparation and proposal costs; and (iii) the costs to be recovered are both reasonable and allocable, *i.e.*, incurred specifically for the contract in question." *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012). The protestor "bears the burden of proving that it is entitled to recover its costs." *Q Integrated Cos., LLC v. United States*, 133 Fed. Cl. 479, 485 (2017).

Applying these standards, the court agrees with the government, Def.'s Resp. at 5-10, that A2JV is not entitled to bid preparation and proposal costs. To recover bid preparation and proposal costs, a protestor must demonstrate that the agency's prejudicial error "caused the protester to incur unnecessarily bid preparation and proposal costs." *Reema*, 107 Fed. Cl. at 532. This causation prong operates to "place the [protestor] in the position he or she would have occupied but for defendant's wrong." *Id.* (internal quotation omitted). If these costs were "not rendered a needless expense by defendant's

7

erroneous conduct, but rather were lost due to" some other reason, the bid preparation and proposal costs are not recoverable. *Id.* at 533 (internal quotations and citations omitted); *see also Hyperion, Inc. v. United States*, 120 Fed. Cl. 504, 507-08 (2015) (holding that the protestor was not entitled to bid preparation and proposal costs where the protestor's successful challenge resulted in the set-aside of the initial award, but where the protestor was then unable to re-compete due to a proper decision to cancel the solicitation and re-procure the services through a sole-source award).

      Here, this court held that NASA acted arbitrarily and capriciously in disqualifying A2JV's proposal. *See* Feb. 4, 2020 Order at 1 (noting that A2JV's requests for declaratory relief that the disqualification decision was arbitrary, capricious, and not in accordance with law had been granted). But this disqualification is not the reason for A2JV's inability to become an awardee of the ABSS2 contract. Rather, NASA's reasonable decision to cancel the ABSS2 competition altogether after delays caused by other protests and a change in NASA policy caused A2JV's inability to become an awardee of the ABSS2 contract. *See A2JV III*, 145 Fed. Cl. at 681-84. These reasons for the cancellation had nothing to do with A2JV's challenge to its disqualification. A2JV has thus failed to establish a causal link between NASA's legal error – the disqualification decision – and A2JV's eventual inability to get a contract. *See Reema*, 107 Fed. Cl. at 532-33. In other words, the disqualification decision was not the cause of A2JV unnecessarily incurring its bid preparation and proposal costs; ultimately, NASA's proper cancellation decision was the cause, and A2JV would have lost its bid preparation

and proposal costs even if NASA had not disqualified A2JV.  A2JV is thus not entitled to the bid preparation and proposal costs it seeks.

In this connection, it is important to remember that A2JV was not the only offeror who unsuccessfully competed for an ABSS2 contract.  NASA received twenty proposals in response to the solicitation.  *A2JV III*, 145 Fed. Cl. at 678.  Several of these were in the competitive range, but, just like A2JV, these companies will not be awarded an ABSS2 contract.  *Id.*; *see E.W. Bliss Co. v. United States*, 77 F.3d 445, 447 (Fed. Cir. 1996) ("Proposal preparation expenses are a cost of doing business that normally are lost when the effort to obtain the contract does not bear fruit." (internal quotations and citations omitted)).  Awarding A2JV bid preparation and proposal costs would provide A2JV a substantial windfall that other offerors cannot obtain.

A2JV's arguments to the contrary are not persuasive.  A2JV appears to argue that it was prejudiced by the agency's cancellation decision.  *See* Pl.'s Reply at 6 (arguing that "here," the court found that A2JV "was prejudiced by the agency's cancellation decision").  However, the court did not determine that NASA committed a prejudicial error in cancelling the solicitation.  Rather, the court found NASA's cancellation decision reasonable.  *A2JV III*, 145 Fed. Cl. at 681-84.  Moreover, the court further held that NASA's proper cancellation decision was unrelated to the disqualification error.  *Id.* at 684; *see also* Def.'s Resp. at 8 & n.2.

With this in mind, the cases A2JV relies on to claim bid preparation and proposal costs are inapposite.  First, A2JV cites *Innovation Development Enterprises of America, Inc. v. United States*, 114 Fed. Cl. 213, 216 (2014) to demonstrate that it has established

9

the causal link between NASA's legal error and its bid preparation and proposal costs. Pl.'s Reply at 4. In *Innovation Development*, the protestor alleged that the agency had acted unreasonably when it awarded a sole-source bridge contract to the incumbent contractor, rather than conducting a competitive procurement on which the protestor could have bid. *Innovation Dev. Enters. of America, Inc. v. United States*, 108 Fed. Cl. 711, 720-21 (2013). This court agreed with the protestor and held that the agency had acted arbitrarily and capriciously in awarding the sole-source contract. *Id.* at 727. Despite the fact that the sole-source contract had already been fully performed by the time the court had issued its opinion, the court determined that the matter was not moot because, although the protestor could not obtain injunctive or declaratory relief, the protestor could still recover bid preparation and proposal costs. *Id.* at 724.

Relying on *Innovation Development*, A2JV argues that this court may award "bid preparation and proposal costs when, after a finding of the agency's legal error, a protestor cannot become an awardee" for a reason other than that error. Pl.'s Reply at 4. However, in making this argument, A2JV misconstrues the decision in *Innovation Development*. The legal error in *Innovation Development* – the improper sole-source award – caused the protestor to lose its bid preparation and proposal costs.[2] Here, NASA's justified cancellation decision ultimately caused A2JV to unnecessarily incur its bid preparation and proposal costs, not NASA's erroneous disqualification decision.

---

[2] The protestor in *Innovation Development* was ultimately denied bid preparation and proposal costs because no draft proposal was ever prepared by the protestor or submitted to the agency. 114 Fed. Cl. at 222.

10

Second, A2JV cites *Klinge Corp. v. United States*, 82 Fed. Cl. 127 (2008) (*Klinge I*) and *Klinge Corp. v. United States*, 83 Fed. Cl. 773 (2008) (*Klinge II*) in support of its position. Pl.'s Reply at 5. In *Klinge I,* the protestor succeeded in its challenge to the agency's indefinite delivery, indefinite quantity contract (IDIQ) solicitation, and this court enjoined performance under the IDIQ contract. 82 Fed. Cl. at 139. Following the injunction, the agency recompeted the contract under the Federal Supply Schedule (FSS), for which the protestor was not eligible to compete. *Klinge II*, 83 Fed. Cl. at 774-75. The protestor challenged the FSS solicitation, seeking to enjoin the FSS solicitation on the grounds that the agency had improperly cancelled the original IDIQ solicitation. *Id.* at 774. The court found that there was "prejudicial error in the agency's de facto cancellation of the first [IDIQ] procurement." *Id.*; *see id.* at 779-80 (explaining that the agency erred in determining that it could not consider the protestor's proposal under the original solicitation and therefore initiated the FSS solicitation). However, the court declined to enjoin the FSS solicitation, which was "otherwise unimpeached." *Id.* at 780. Instead, the court awarded the protestor bid preparation and proposal costs in connection with its challenge to the IDIQ solicitation because the injunctive relief the protestor was awarded in the IDIQ challenge had been made irrelevant by the erroneous cancellation decision. *Id.*; *see also Klinge Corp. v. United States*, 87 Fed. Cl. 473, 474 (2009).

A2JV argues that *Klinge I* and *Klinge II* demonstrate that this court has awarded bid preparation and proposal costs "when, after a finding of the agency's legal error, the agency cancelled the procurement and the successful protestor was not returned to the position he or she would have occupied but for the defendant's wrong." Pl.'s Reply at 5

11

(internal quotation omitted).  However, A2JV again fails to recognize that a legal error caused protestor to lose its bid preparation and proposal costs.  In *Klinge I* and *Klinge II*, the court not only determined that the agency had erred in conducting the IDIQ solicitation, but the agency also committed prejudicial error when it cancelled that solicitation.  Ultimately, the *Klinge* court determined that the prejudicial cancellation error warranted an award of bid preparation and proposal costs, because the previously-awarded injunctive relief was no longer available.  *Klinge II*, 83 Fed. Cl. at 474.

In contrast, here, the court determined that NASA did *not* err in cancelling the solicitation at issue, nor did the court previously award A2JV injunctive relief based on the disqualification decision; in fact, the agency had properly cancelled the solicitation before injunctive relief could be considered.  A2JV has not shown that NASA's error – the disqualification decision – was the cause of its unnecessarily incurred bid preparation and proposal costs.  A2JV's motion for bid preparation and proposal costs is therefore denied.

### B. A2JV is Not Entitled to Attorney's Fees and Costs Because A2JV is Not a Prevailing Party

EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  EAJA also provides for the award of certain costs to a "prevailing party."  *Id.* § 2412(a).  "The essential

objective of the EAJA is to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in the vindication of their rights." *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006) (alterations and quotations omitted).

"To recover an award under EAJA, the applicant must prove that it was the prevailing party in the underlying action." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 759 (2011) (internal quotations omitted). The term "prevailing party," as it appears in EAJA, "means a party that obtains a 'material alteration of the legal relationship of the parties.'" *Dellew Corp. v. United States*, 855 F.3d 1375, 1379 (Fed. Cir. 2017) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). Such a change in the parties' legal relationship "must have a certain judicial imprimatur, such as an enforceable judgment on the merits or a court-ordered consent decree." *Dellew Corp.*, 855 F.3d at 1379-80 (internal quotations and alterations omitted).

An award of declaratory relief may confer prevailing party status. *See Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). However, declaratory relief is insufficient where it does not "affect[] the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam); *see also Tx. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). The declaratory relief must "modify[] the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine*, 568 U.S. at 4.

Applying these standards, the court concludes that A2JV has not demonstrated that it is a prevailing party under EAJA, and that, therefore, A2JV's motion for attorney's

13

fees, expenses, and costs must be denied. As an initial matter, it is undisputed that A2JV has not obtained injunctive relief or money damages in this case, which "will usually satisfy" the prevailing party test. *Id.* In fact, following NASA's cancellation decision, the court dismissed as moot A2JV's prayers for injunctive relief seeking to reinstate the ABSS2 solicitation. *See A Squared Joint Venture*, 2019 WL 2591205, at *3 (dismissing the eighth and ninth prayers for relief in A2JV's third amended complaint); *Innovation Dev. Enter. of Am., Inc. v. United States*, 600 F. App'x 743, 747 (Fed. Cir. 2015) (unpublished) (holding that a protestor who "did not receive an injunction and recovered no money damages" cannot qualify as a prevailing party under EAJA).

Instead, A2JV relies on the court's ruling in its favor as to NASA's disqualification decision, granting A2JV declaratory relief that the decision was arbitrary, capricious, and not in accordance with law. Nov. 29, 2018 Order, ECF No. 104 (holding in A2JV's favor); Dec. 21, 2018 Order, ECF No. 113 (denying in relevant part reconsideration and directing the parties to brief the propriety and scope of injunctive relief); Feb. 4, 2020 Order, ECF No. 172 (noting that A2JV's requests for declaratory relief that the disqualification decision was arbitrary, capricious, and not in accordance with law had been granted). However, as discussed above, declaratory relief is only sufficient to confer prevailing party status if that relief materially alters the legal relationship between the parties. *See Dellew Corp.*, 855 F.3d at 1379; *Lefemine*, 568 U.S. at 4. Here, the court agrees with the government, Def.'s Resp. at 18-21, that under the circumstances of this case, the court's holding that NASA's disqualification decision was arbitrary and capricious is insufficient to satisfy the prevailing party test.

14

To begin, A2JV has not shown that NASA took any action that directly benefited A2JV based on the court's legal holding. Although the court asked the parties to brief whether injunctive relief should be granted, the parties never had that opportunity because, for reasons unrelated to A2JV's challenge, the court found that NASA had properly cancelled the solicitation. In such circumstances, A2JV's claim for injunctive relief became moot. *See A Squared Joint Venture*, 2019 WL 2591205, at *3. Moreover, although the court declined to hold that A2JV's claims for declaratory relief were moot because "A2JV still has a claim for bid preparation costs" and other relief depending on the outcome of the cancellation decision, *see id.*, the court has now upheld the cancellation and has declined to award A2JV bid preparation and proposal costs. A2JV therefore cannot demonstrate that any direct action has been taken or monetary relief awarded that is associated with the declaratory relief granted by the court.

Instead, in its motion, A2JV claims that the court's ruling that the disqualification decision was arbitrary may alter the parties' relationship in the future because "[t]here can be no doubt that if the joint venture were to again bid on a NASA opportunity, that NASA could not ignore the rulings of this [c]ourt." Pl.'s Mot. at 14. However, as the government argues, A2JV's assertion is speculative and cannot support a finding that the parties' legal relationship changed based on the granted declaratory relief. Def.'s Resp. at 20-21. A2JV does not show that NASA intends to, in the future, solicit services on which A2JV will bid or that the factual situation that led to A2JV's disqualification would arise again in that future solicitation. Because A2JV has not shown that the court's declaratory relief "modified the defendant's behavior in a way that directly

15

benefits" A2JV, *Lefemine*, 568 U.S. at 4, A2JV has failed to demonstrate that it is a prevailing party under EAJA.

The two cases A2JV relies on, *Infiniti Information Solutions, LLC v. United States*, 94 Fed. Cl. 740 (2010) and *Naplesyacht.com v. United States*, No. 04-252C, 2005 WL 6112642 (Fed. Cl. Mar. 31, 2005), do not show otherwise. Pl.'s Reply at 13-14. It is true that in both of these cases, declaratory relief was found to convey prevailing party status. *Infiniti*, 94 Fed. Cl. at 747-48; *Naplesyacht*, 2005 WL 6112642, at *8. However, in both cases, the protestor was able to show that the declaratory relief granted changed the legal relationship between the parties. In *Infiniti Information*, the court issued declaratory relief that affirmatively "set aside" the relevant contract. 94 Fed. Cl. at 747-48. And in *Naplesyacht.com*, the court determined that the declaratory relief it had ordered "was designed to prevent abuse on future contracts for which plaintiff may compete," *and* the court also awarded bid preparation and proposal costs. 2005 WL 6112642, at *8.

In contrast, A2JV here obtained only a declaration that NASA's disqualification decision was arbitrary and capricious. That decision, however, became irrelevant once that court determined that NASA was justified for wholly separate reasons to cancel the ABSS2 procurement. Because of the justified cancellation decision, the court's earlier declaratory judgment did not ultimately alter the legal relationship between the parties. *Cf. Rhodes*, 488 U.S. at 4 (holding that a plaintiff who obtains a formal declaratory judgment but gains no real "relief whatsoever" is not a prevailing party). For these reasons, A2JV has not demonstrated that it is a prevailing party, and its motion for attorney's fees, expenses, and costs under EAJA must be denied.

## III. CONCLUSION

Based on the foregoing, A2JV's motion for bid preparation and proposal costs and for attorney's fees, ECF No. 175, is **DENIED**.

Pursuant to the court's November 18, 2019 opinion denying A2JV's motion for judgment on the administrative record and granting the government's cross motion for judgment on the administrative record, ECF No. 153, and pursuant to this opinion denying A2JV's motion for bid preparation and proposal costs, the Clerk is directed to enter judgment in favor of the government.

**IT IS SO ORDERED**.

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Senior Judge